Whitten vs. The State of Georgia.

JAMES WHITTEN, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

1. The credibility of the witness testifying to the jury, on the trial of a case, is peculiarly matter for the determination of the jury, and only in very extreme cases ought the Court to interfere with a verdict turning on the credit to be given to the witnesses testifying on the trial.

2. In cases where the penalty is left, by the law, to the discretion of the Court, with certain fixed limits, this Court will not disturb the judgment of the Judge of the Superior Court, so long as he does not exceed the limits prescribed to him by the statute.

Criminal law. Credibility of witness. Degree of punishment. Before Judge HARRELL. Randolph Superior Court. May Term, 1872.

James Whitten was placed upon trial for the offense of assault and battery, and pleaded not guilty.

The following evidence was introduced:

F. Gore, sworn: Witness is the prosecutor; on April 22d,

1872, defendant came to witness' field, in Randolph county, where he was plowing, and notified him to attend and work the road; defendant was a road overseer; he told defendant that "he would send a hand in his place;" defendant replied that "he would not receive him;" witness then said, "if you have come here to raise a fuss with me, you must go somewhere else to raise it;" thereupon, a general quarrel arose; defendant got down from his mule, with his knife in his hand, came over the fence and was approaching witness, when witness picked up a piece of a fence rail and threatened, if he came nearer, to strike him with it; defendant then got back over the fence and rode off; witness went that day to see J. A. Moreland, who was a Justice of the Peace and road commissioner, to ascertain if he had the right to put in a hand to work in his place; Moreland told witness that he thought he had the right, if he put in a good hand; on his way back, witness met defendant in the road; defendant said to him, "Why don't you want to work the road, you damned, lazy son of a bitch?" defendant called witness that three times; accused witness of stealing his property from women and children; witness said he "had never stolen from him, nor had he (witness) acted as he had, to go into Pace's gin-house and take a cat;" defendant got down from his mule with his knife; witness had a stick, with which he was walking; defendant approached him with his knife; witness struck at him with his stick as defendant approached, and aimed to knock the knife out of his hand; they had a scuffle, in which defendant cut witness on the hand, and cut his pants on the front next the belly; witness got hold of him and held him until he agreed to let witness alone; defendant got up and walked off; defendant then picked up a piece of a rail, approached witness, and struck him a severe blow on the head, and they again had a contest, until witness a second time obtained a firm hold and held defendant until he agreed to quit; witness did not tell J. A. Moreland, at the time referred to, that Whitten did not get over the fence into the field, and that he (witness) got over the fence with the piece of rail and approached defendant; did

Whitten *vs.* The State of Georgia.

not tell Hart, at the time and place mentioned, a few minutes after the fight was over, that he had struck Whitten and knocked him down with the stick; witness talked with Hart at that time; showed him the cut on his hand and the cut on his pants.

### EVIDENCE FOR THE DEFENDANT.

John A. Moreland, sworn: Prosecutor came to see witness on the day of the difficulty, to obtain a warrant for the defendant for his conduct in the field; witness is a road commissioner and a Justice of the Peace; told witness that defendant did not get over the fence, but that he (prosecutor) got over the fence with a piece of rail; that defendant got down, tied his mule, and took out his knife; that prosecutor got back over the fence into the field; prosecutor's character for truth and veracity is bad; witness would not believe him on his oath in a Court of justice.

George P. Hart, sworn: Witness was at work in his field when prosecutor came along, a few minutes after the difficulty; prosecutor said that "he had struck defendant twice with a stick, and had left him lying in the road;" asked witness to go down and attend to him; prosecutor did not show witness the cut on his hand or on his pants; saw no blow on him except a little place on the side of his face; knows the general character of prosecutor; would not believe him on his oath in a Court of justice.

Henry L. Hart, David Jones, Joseph Jones, R. C. Sevin, J. T. Berry, all testified that from their knowledge of the general character of prosecutor, they would not believe him on his oath in a Court of justice.

### REBUTTAL FOR THE STATE.

John Kiddoo, W. D. Kiddoo, S. A. McNeil, John M. Redding, S. T. Jenkins, W. L. Baldwin, James R. Wooten, John W. Sealy, Isaac Duke, Henry Hartfield, —— Shelly, L. S. Chastain, Jacob Davis, and E. L. Douglass, all testified that from their knowledge of the general character of prosecutor they would believe him on his oath in a Court of justice.

The jury found the defendant guilty.

A motion for a new trial was made upon the ground that the verdict was contrary to the evidence, which was overruled by the Court. Defendant was sentenced to six months' imprisonment, from which he might, at any time, be released by the payment of a fine of $250 and costs.

Plaintiff in error excepts to, and assigns error in the following rulings of the Court:

1st. In overruling said motion for a new trial.

2d. In imposing a cruel and oppressive penalty, and one entirely disproportionate to the nature and character of the offense.

H. FIELDER, for plaintiff in error.

J. S. FLEWELLEN, Solicitor General, represented by B. S. WORRILL, for the State.

McCAY, Judge.

There can be no good reason for saying this verdict is not supported by the evidence, other than the belief of the plaintiff in error, that the State's witness was not worthy of credit. It would, in our judgment, be an infringement by the Court on the province of a jury, to undertake to say that they ought not to have believed the witness. The jury are the judges of the credibility of the witnesses, in a special sense. They see them, they hear them. The eye, the tone, the manner, the expression of countenance, all speak, and bear testimony, *pro* and *con*, that cannot be got into a brief of the testimony or bill of exceptions. In this case, too, there were many witnesses to the good character of the witness. True, the defendant's witnesses were the nearest neighbors of the witness. But it often happens, in this country, that the people, and especially the business men of the county town, know people better than those living far nearer them.

We do not think that the section of the bill of rights prohibiting excessive fines, etc., applies to circumstances such as this. Here the Legislature has given the Judge discretion, and

he has acted within the limits fixed by law. We greatly doubt if it be the province of this Court to interfere with this discretion, under any circumstances. How is this Court to enter into the motives of the Judge? The object of punishment is to prevent crime. Perhaps the circumstances of the community may require a Judge to put heavy penalties on convicts, and crime may be specially prevalent, and it may be to the public interest to startle those liable to guilt. The prisoner has violated the law. The penalty fixed by law is greater than the Judge has assessed. His discretion has lessened it, though not so much as his counsel thinks it ought to have done. But how are we to know what the state of public morals in Randolph county requires? Indeed, if this man is guilty, the punishment is light enough; and if public opinion in Randolph county thinks it too heavy, it may be that opinion needs to be educated into a greater horror of crimes like this.

Whether the law is unconstitutional, a violation of that article of the Constitution which declares excessive fines shall not be imposed nor cruel and unusual punishments inflicted, is another question. The latter clause was, doubtless, intended to prohibit the barbarities of quartering, hanging in chains, castration, etc. When adopted by the framers of the Constitution of the United States, larceny was generally punished by hanging; forgeries, burglaries, etc., in the same way, for, be it remembered, penitentiaries are of modern origin, and I doubt if it ever entered into the mind of men of that day, that a crime such as this witness makes the defendant guilty of deserved a less penalty than the Judge has inflicted. It would be an interference with matters left by the Constitution to the legislative department of the government, for us to undertake to weigh the propriety of this or that penalty fixed by the Legislature for specific offenses. So long as they do not provide cruel and unusual punishments, such as disgraced the civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion.

Judgment affirmed.