MORRIS PLAN BANK OF GEORGIA *v.* SIMMONS *et al.*

158

No. 15466. JULY 5, 1946. REHEARING DENIED JULY 16, 1946.

*Houston White* and *Sam F. Lowe Jr.,* for plaintiff in error.

*D. J. Meyerhardt* and *Frank A. Bowers,* contra.

BELL, Chief Justice. The facts of the case may be summarized as follows: Henry C. Simmons and Louis Rosenberg filed an equitable petition against The Morris Plan Bank of Georgia, seeking among other things to set aside a judgment because of an adjudication in bankruptcy. The petition was later amended, and an intervention was filed. The case is here upon exceptions taken by the bank to orders overruling its general and special demurrers to the petition as amended and to the intervention.

The Morris Plan Bank of Georgia, after obtaining a money judg-

ment against Ernest Frank Treadway, instituted garnishment proceedings in the Civil Court of DeKalb County based on such judgment, and caused a summons of garnishment to be issued and served upon Henry C. Simmons and Louis Rosenberg "doing business as Simmons Plating Works." The garnishees failed to answer the summons, and a judgment by default was taken against them. When this judgment was about to be enforced, they instituted the present suit in equity, praying, among other things, that it be vacated and set aside, and that the bank be restrained from enforcing it. They made in their petition the following contentions: (1) The adjudication of Treadway as a bankrupt within four months after service of the summons of garnishment rendered the garnishment lien and proceedings null and void; (2) the adjudication and discharge of Treadway as a bankrupt pending the garnishment proceedings nullified the (basic) judgment of the bank against him, so that no judgment could be taken against the garnishee; (3) the plaintiffs, in failing as garnishees to answer the garnishment summons, relied on a certificate issued to them by the clerk of the Civil Court of DeKalb County, stating in effect that, because the garnishment had been dissolved, they were released from the duty of answering; and (4) the bank had elected to proceed against the sureties on the dissolution bond, by having an execution levied on the property of one of such sureties (S. H. Belk, intervenor).

The date of the original judgment againt Treadway does not appear. The garnishment summons was issued and served on the plaintiffs, his employers, on April 28, 1944. On May 3, 1944, Treadway dissolved the garnishment by giving a dissolution bond with S. H. Belk as a surety. On the latter date, he also filed his voluntary petition in bankruptcy and was adjudged a bankrupt. He received his discharge in bankruptcy on July 25, 1944. The default judgment against the garnishees (plaintiffs in the equity suit, defendants in error here) was rendered on September 6, 1944.

■ We deal first with the questions relating to bankruptcy. Section 67 (f) of the Bankruptcy Act of 1898 provides: "All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, and any bond which may be given to dissolve any such lien so created, shall be deemed null and void in case he is adjudged a

bankrupt, and the property affected by the levy, judgment, attachment, or other lien, and any non-exempt property of his which he shall have deposited or pledged as security for such bond or to indemnify any surety thereon, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry." 11 U. S. C. A., § 107 (f).

The Bankruptcy Act being a Federal statute, decisions of the United States Supreme Court construing and applying it are binding upon this court as precedents. Code, §§ 1-602, 2-8501. In Fischer v. Pauline Oil & Gas Co., 309 U. S. 294 (60 Sup. Ct. 535, 84 L. ed. 764), the United States Supreme Court, reviewing a judgment of the Supreme Court of Oklahoma based upon a construction of the above-quoted section, indicated at the beginning of its opinion that certiorari had been granted because of "an important question concerning the operation of the section, not settled by decisions of this court, on which State courts have reached conflicting conclusions." As pointed out later herein, there is some conflict even within our own decisions.

In the Fischer case, one of the parties claimed certain property in virtue of a sheriff's sale made under a State court execution, while the claim of the other party was based upon a conveyance confirmed by a court of bankruptcy. The debtor (defendant in the State court execution) was adjudicated a bankrupt within four months after the date of the execution lien, and while the trustee in bankruptcy objected to confirmation of the sheriff's sale by the State court, his objections were overruled and he did not perfect an appeal. The case was thus dealt with by the United States Supreme Court as if no effort to avoid the execution lien had been made by the trustee in bankruptcy. In the opinion, delivered for the court by Mr. Justice Roberts, it was said:

"The question is whether the State court was right in holding that, by force of § 67 (f), the adjudication in bankruptcy automatically discharged the lien of the levy, irrespective of any action on the part of the trustee. Expressions supporting this view may be found in cases decided by Federal courts, and statements squinting in the same direction have been made by this court. In none of these instances, however, was the litigation between third parties, or between the lienor or one claiming title under an execution sale, and an opponent deriving title from the trustee in bankruptcy. In all of them a bankruptcy receiver or trustee instituted an action in the bankruptcy court or some other court, or became a party to the proceeding in which the lien was acquired, to avoid the lien, or the bankrupt brought suit to avoid the lien as to property set apart to him as exempt in the bankruptcy case.

"Some State courts have definitely held that the adjudication operates automatically to nullify the lien, which must be treated as void whenever and wherever drawn into question, either in a direct or a collateral proceeding, and whether the trustee in bankruptcy has taken the property into his possession or abandoned it.

"On the other hand, it was said in Taubel-Scott-Kitzmiller Co. v. Fox, 264 U. S. 426, 429 [44 Sup. Ct. 396, 68 L. ed. 770]: 'For the statute does not, as a matter of substantive law, declare void every lien obtained through legal proceedings within four months of the filing of the petition in bankruptcy.' The court there pointed out that a number of issues of fact must be resolved before it can be determined that the lien is void. And, in Pigg & Son v. United States, 81 F. 2d 334, 337, it was held that liens obtained in judicial proceedings within four months of the filing of the petition are not void, but voidable in a proper suit, and that the property affected by the lien does not automatically pass to the trustee, discharged of the lien.

"In Connell v. Walker, 291 U. S. 1, 3 [54 Sup. Ct. 257, 78 L. ed. 613], this court indicated that the operation of § 67 (f) is not automatic, since the trustee in bankruptcy has an election either to avoid the lien, or to be subrogated to it for the benefit of the bankrupt estate.

"A number of State courts have held, and we think rightly, that the section is intended for the benefit of creditors of the bankrupt and, therefore, does not avoid liens as against all the world but

only as against the trustee and those claiming under him. It is settled, however, that not only may the trustee avoid the lien (Taubel-Scott-Kitzmiller Co. *v.* Fox, supra; Connell *v.* Walker, supra), but that the bankrupt may assert its invalidity as respects property set apart to him as exempt in the bankruptcy proceedings. Chicago, B. & Q. R. Co. *v.* Hall, 229 U. S. 511 [33 Sup. Ct. 885, 57 L. ed. 1306]. But the lien is not avoided for the benefit of the bankrupt save as to his exempt property or nullified as respects other lienors or third parties.

"Although.§ 67 (f) unequivocally declares that the lien shall be deemed null and void, and the property affected by it shall be deemed wholly discharged and released, the section makes it clear that this is so only under specified conditions. At the date of creation of the lien the bankrupt must have been insolvent; the lien must have been acquired within four months of the filing of the petition in bankruptcy; and the property affected must not have been sold to a bona fide purchaser. Furthermore, the lien is preserved if the trustee elects to enforce it for the benefit of the estate. These conditions create issues of fact which, as between the trustee, or one claiming under him, and the lienor, or one claiming by virtue of the lien, the parties are entitled to have determined judicially. The courses open to the trustee under the Bankruptcy Act of 1898 were to proceed to have the lien declared void, by plenary suit, or by intervention in the court where it was obtained, or by applying, in the bankruptcy cause, to restrain enforcement, as might be appropriate under the circumstances."

On June 22, 1938, the Bankruptcy Act of 1898 was amended in certain respects by an act known as the Chandler Act. By that amendment, the provisions of section 67 (f) as quoted supra, were changed to read as follows:

"(1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against such person shall be deemed null and void, (a) if at the time when such lien was obtained such person was insolvent, or (b) if such lien was sought and permitted in fraud of the provisions of this title: *Provided,* however, That if such

person is not finally adjudged a bankrupt in any proceeding under this title and if no arrangement or plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and avoided.

"(2) If any lien deemed null and void under the provisions of paragraph (1) of this subdivision (a) has been dissolved by the furnishing of a bond or other obligation, the surety on which has been indemnified directly or indirectly by the transfer of or the creation of a lien upon any of the non-exempt property of a person before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against him, such indemnifying transfer or lien shall also be deemed null and void: *Provided, however,* That if such person is not finally adjudged a bankrupt in any proceeding under this title, and if no arrangement or plan is proposed and confirmed, such transfer or lien shall be deemed reinstated with the same effect as if it had not been nullified and avoided.

"(3) The property affected by any lien deemed null and void under the provisions of paragraphs (1) and (2) of this subdivision (a) shall be discharged from such lien, and such property and any of the indemnifying property transferred to or for the benefit of a surety shall pass to the trustee or debtor, as the case may be, except that the court may on due notice order any such lien to be preserved for the benefit of the estate, and the court may direct such conveyance as may be proper or adequate to evidence the title thereto of the trustee or debtor, as the case may be: *Provided, however,* That the title of a bona fide purchaser of such property shall be valid, but if such title is acquired otherwise than at a judicial sale held to enforce such lien, it shall be valid only to the extent of the present consideration paid for such property." 52 St. at Large 1938, pp. 875-876, 11 U. S. C. A. 1945, Cumulative Pocket Part, § 107 a.

While the decision in Fischer *v.* Pauline Oil & Gas. Co., supra, was rendered in 1940, the court had no occasion to construe the amendment of June 22, 1938, since the facts of the case arose several years before passage of that act. The provisions of the amendment as quoted may have changed the law materially in some respects, but since the general purposes of the Bankruptcy Act evidently remained the same as they were before, namely, to enable an

honest debtor to start afresh, free from the weight of oppressive indebtedness, and to distribute his assets equitably among his creditors, we do not think that the amendment made any change that would be material in the instant case. Local Loan Co. v. Hunt, 292 U. S. 234 (54 Sup. Ct. 695, 78 L. ed. 1230, 93 A. L. R. 195). As to the Chandler Act, see In re Dacus (1940), 34 Fed. Supp. 841, 53 Am. Bank. Rep. (N. S.) 217; In re Wisconsin Co-op. Milk Pool (1941), 119 Fed. (2d) 999, 46 Am. Bank. Rep. (N. S.) 220.

Comparing the facts of the present case with those of the Fischer case, we consider that the decision in that case would be absolutely controlling here, if the provisions of section 67 (f) had not been amended as they were in 1938; and in view of what has just been said as to the amendment, we do not regard it as being any the less controlling because of such amendment. Accordingly, although in this case, Treadway filed his voluntary petition in bankruptcy, and was adjudicated a bankrupt on May 3, 1944, which was only five days after the summons of garnishment was served upon the plaintiffs (garnishees)—so that the lien of the garnishment might have been avoided in an appropriate proceeding by a trustee in bankruptcy acting in the interest of creditors, provided the debtor was insolvent at the time when such lien was obtained, or the bankruptcy court might have ordered the lien preserved for the benefit of the estate—the petition as filed by the present plaintiffs, seeking to set aside the default judgment against themselves as garnishees, does not purport to serve any purpose recognized by the Bankruptcy Act, and the plaintiffs do not show any right to invoke its provisions. They are debtors rather than creditors of the bankrupt, and would therefore have no interest whatever in avoiding the lien for the benefit of such creditors. Nor are we concerned here with any right of the bankrupt, for it does not appear that the debt owed to him by the garnishees was set apart to him as an exemption. Furthermore, he is not complaining.

This court has several times said that the effect of section 67 (f) of the National Bankruptcy Act is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him. See *Equitable Credit Co. Inc.* v. *Miller,* 164 *Ga.* 49 (2) (137 S. E. 771), and cases there cited. See also *Albany & Northern Ry. Co.* v. *Dunlap Hardware Co.,* 8 *Ga. App.* 171 (68 S. E. 868);

*Dickens* v. *Breedlove*, 34 *Ga. App.* 459 (129 S. E. 886) ; *Ryder* v. *Clare & Co.*, 56 *Ga. App.* 671 (193 S. E. 603). These decisions are in harmony with the subsequent decisions of the United States Supreme Court in the Fischer case, supra. However, counsel for the plaintiff in error, relying upon these Georgia cases and the Fischer case, assert that there are other Georgia decisions which are contrary to the Fischer case, and which we are requested to overrule or disapprove, including: *Armour Packing Co.* v. *Wynn* (1904), 119 *Ga.* 683 (3) (46 S. E. 865) ; *Mohr & Sons* v. *Mattox* (1904), 120 *Ga.* 962 (48 S. E. 410) ; *Finney* v. *Knapp Co.* (1916), 145 *Ga.* 400 (89 S. E. 413) ; *Alvaton Mercantile Co.* v. *Caldwell* (1923), 156 *Ga.* 317 (119 S. E. 25) ; *Ricks* v. *Smith* (1917), 20 *Ga. App.* 491 (93 S. E. 116) ; *Morris Fertilizer Co.* v. *Jackson* (1921), 27 *Ga. App.* 567 (110 S. E. 219) ; *Barnes* v. *Snyder* (1924), 33 *Ga. App.* 501 (126 S. E. 863) ; *Longshore* v. *Collier* (1927), 37 *Ga. App.* 450 (140 S. E. 636) ; *Roberts* v. *Seanor* (1932), 46 *Ga. App.* 5 (166 S. E. 375) ; *Allen* v. *Atlanta Furniture Co.* (1934), 49 *Ga. App.* 557 (176 S. E. 663) ; *Saint John* v. *Johnson* (1936), 54 *Ga. App.* 89 (187 S. E. 136).

We agree that each of those decisions indicates that the court took a different view of section 67 (f) from that expressed in the Fischer case, even though correct results may have been reached in some of them. Nevertheless, it is unnecessary in this case to overrule any of such decisions, since, regardless of any conflict between them and the Fischer case, and whether they be overruled or not, the decision in that case must be followed as the controlling authority, in the instant case. Code, §§ 1-602, 2-8501, supra; *Wrought Iron Range Co.* v. *Johnson*, 84 *Ga.* 754 (2) (11 S. E. 233, 8 L. R. A. 273) ; *Georgia Railroad Co.* v. *Cubbedge, Hazlehurst & Co.*, 75 *Ga.* 321; *Southern Ry. Co.* v. *Parker*, 194 *Ga.* 94 (1) (21 S. E. 2d, 94) ; Brown *v.* Palmer Clay Products Co., 290 Mass. 108 (195 N. E. 122).

We do not deem it necessary to comment further upon the decisions listed above. One thing is now clear, and that is, the filing of a petition in bankruptcy followed by an adjudication does not automatically annul liens obtained within four months, so as to make them subject to collateral attack; and furthermore, such a lien may be avoided only at the instance of the trustee in bankruptcy acting for the benefit of creditors, or by some other person

having a right as against it, under the bankruptcy act. It must also be shown that the debtor was insolvent at the time the lien was obtained. Compâre Liberty National Bank v. Bear, 265 U. S. 365 (44 Sup. Ct. 499, 68 L. ed. 1057); Wickwire Spencer Steel Co. v. Kemkit Scientific Corp, 292 N. Y. 139 (54 N. E. 2d, 336, 153 A. L. R. 208).

The plaintiff further contends that the judgment on which the garnishment was based, having been listed in the petition in bankruptcy as filed by Treadway, became null and void upon his being discharged in bankruptcy, so that it would not thereafter constitute the requisite foundation for a judgment against the garnishees. There is no merit in this contention. The fact that the judgment may thereafter have been subject to a plea by Treadway himself, based upon his discharge, did not prevent it from continuing to be a sufficient support for the garnishment, or for the judgment as later rendered against such garnishees. *Light* v. *Hunt,* 17 *Ga. App.* 491 (3) (87 S. E. 763); *Henley* v. *Colonial Stages South Inc.,* 56 *Ga. App.* 722 (193 S. E. 905). See also, in this connection, *Whitley* v. *Jackson,* 34 *Ga. App.* 283 (2) (129 S. E. 294); *Whitley* v. *Jackson,* 34 *Ga. App.* 286 (9) (129 S. E. 662); *Hutchings* v. *Roquemore,* 171 *Ga.* 359 (5) (155 S. E. 675); *Sanders* v. *J. Austin Dillon Co.,* 181 *Ga.* 420 (182 S. E. 586); and on the general question as to nullification of liens, see 6 Am. Jur. 698-700, §§ 298-303; 8 C. J. S. 904, 911, §§ 245, 247. The conclusion just stated is not contrary to any of the following decisions, relied on by counsel for the plaintiffs: *Ingram* v. *Jackson Mercantile Co.,* 2 *Ga. App.* 218 (2) (58 S. E. 372); *Nashville, Chattanooga and St. Louis Ry.* v. *Brown,* 3 *Ga. App.* 561 (2) (60 S. E. 319); *Hartsfield Co.* v. *Ray,* 51 *Ga. App.* 106 (3) (179 S. E. 732).

It follows that the petition in the instant case did not state any cause for setting aside the judgment against the plaintiffs, as defaulting garnishees, in so far as it was based upon the bankruptcy of Treadway, or upon any fact or matter connected therewith.

■ Nor did the petition show cause for the equitable relief sought, on the ground of "mistake," in that, on the dissolution of the garnishment, the clerk of the court in which the garnishment proceeding was pending notified the plaintiffs (garnishees) that they were released, and were not required to answer. The Code, § 46-401, provides that the defendant may dissolve a garnishment

by filing in the proper court a bond, with good security, payable to the plaintiff, conditioned for the payment of any judgment that shall be rendered on such garnishment. The filing of such a bond does not relieve the garnishee from answering. *American Agricultural Chemical Co.* v. *Bank of Madison,* 32 *Ga. App.* 473 (3) (123 S. E. 921). And in case the garnishee shall fail or refuse to file an answer as the law requires, "judgment by default may be entered against him for the amount of such judgment as may have been obtained against the defendant, which judgment may be enforced against the garnishee, notwithstanding a bond to dissolve the garnishment may have been filed by the defendant; and upon such judgment being entered, judgment may be had for the amount thereof against the defendant and the sureties on the bond given to dissolve the garnishment." Code, § 46-406. The clerk of the court has no duty or authority to give any notice to garnishees with respect to the dissolution of a garnishment. Accordingly, the act of the clerk in issuing to these garnishees a written statement to the effect that they were released and need not answer, was not only incorrect as a matter of law, but it was also without color of official authority. While the certificate of the clerk stated that the plaintiff bank's attorney had authorized the issuance of such "release," and the bank might have been bound thereby if such authority had been in fact given, yet the statement of the clerk would not itself prove or tend to prove that the plaintiff's attorney did so authorize the release; and since there is no allegation that the attorney did authorize it, the mere statement of the clerk that he had done so can not be given any weight or consideration in passing on the sufficiency of the petition to withstand the general demurrer. *Sammons* v. *Nabers,* 184 *Ga.* 269 (191 S. E. 124) ; *Beam* v. *Rome Hardware Co.,* 184 *Ga.* 272 (191 S. E. 126).

"Powers of all public officers are defined by law, and all persons must take notice thereof." Code, § 89-903. "Persons dealing with a public officer must take notice of the extent of his powers at their peril." *Wood* v. *Puritan Chemical Co.,* 178 *Ga.* 229 (172 S. E. 557). The petition alleged, however, that for a number of years it had been the custom of the Civil Court of DeKalb County that, when a defendant filed a bond dissolving a garnishment, the clerk would deliver to the garnishee a release setting forth the status of the garnishee after the filing of such bond and his further

duties in connection with such garnishment proceeding. Such a custom could not change the law, which requires an answer of the garnishee notwithstanding the garnishment may have been dissolved, and hence would not authorize a party to rely on such a certificate or notice by the clerk, stating that the garnishee would not be required to file an answer. A mere custom can not change the force of positive law. *McKenzie* v. *Jackson,* 82 *Ga.* 80 (2) (8 S. E. 77); *Fidelity & Deposit Co.* v. *Butler,* 130 *Ga.* 225 (4) (60 S. E. 851, 16 L. R. A. (N. S.) 994); *Deadwyler & Co.* v. *Karow,* 131 *Ga.* 227 (2) (62 S. E. 172, 19 L. R. A. (N. S.) 197).

Nor can the authority of the clerk to issue such a certificate or release be presumed because of a provision in the statute creating the particular court, declaring that the clerk of such court "shall have authority to file all papers, suits, etc., sign all summons, warrants, and executions, and make all necessary records and entries on the docket, and to perform such other duties as may be prescribed in the rules promulgated by said judge, not inconsistent with the law." Ga. L. 1927, pp. 383, 387, section 5. This statute does not confer authority to prescribe any rule that would be inconsistent with law.

There being no law requiring or authorizing the clerk of the court to give such notice, the plaintiffs acted thereon at their peril, and they can not now rely on such notice as affording any ground for relief in equity. Code, §§ 37-219, 37-220; *Fitzgerald Military Band* v. *Colony Bank,* 115 *Ga.* 790 (42 S. E. 70); *Warlick* v. *Neal Loan & Banking Co.,* 120 *Ga.* 1070 (48 S. E. 402); *Tift* v. *Shaw,* 151 *Ga.* 140 (106 S. E. 89); *Bettie* v. *Daniel Bros. Co.,* 175 *Ga.* 349 (165 S. E. 265). The instant case differs on its facts from *Dollar* v. *Fred W. Amend Co.,* 184 *Ga.* 432 (191 S. E. 696), based on an error or mistake of the clerk within the scope of his official duty.

■ The plaintiffs alleged also that the creditor bank, after obtaining judgment against the garnishee, entered a judgment against the sureties on the bond dissolving the garnishment, and thereafter had a levy made on the property of S. H. Belk, one of such sureties, "thereby electing to proceed on said bond to dissolve said garnishment." On the basis of these allegations, it is insisted for the plaintiffs that the execution against them as garnishees should be canceled, and that further proceedings thereunder should be en-

joined. There is no merit in this contention. "A plaintiff may pursue any number of consistent concurrent remedies against different persons until he shall obtain a satisfaction from some of them." Code, § 3-114. See also Code, § 46-406, supra.

The court erred in overruling the general demurrer to the petition as amended. In this view, it is unnecessary to consider the special demurrers.

The intervention filed by S. H. Belk, adopting the allegations of the petition and seeking similar equitable relief as to the judgment against him as a surety on the bond dissolving the garnishment, was subject to the same infirmities as the original petition, so far as pointed out in the first division of this opinion. Moreover, "since the petition was insufficient and must fall because no cause of action is alleged therein, the intervention must likewise fall and meet the same fate as the petition." *Manning* v. *Wills,* 193 *Ga.* 82 (4), 91 (17 S. E. 2d, 261). See also *Bass* v. *Milledgeville,* 180 *Ga.* 156 (2) (178 S. E. 529).

*Judgment reversed. All the Justices concur.*