18748, 18749.   CENTRAL OF GEORGIA RAILWAY COMPANY *v.*
BROTHERHOOD OF RAILROAD TRAINMEN *et al.;* and *vice versa.*

HAWKINS, Justice.   Central of Georgia Railway Company, the plaintiff in
error in the main bill of exceptions, assigns error upon the judgment of
Chatham Superior Court sustaining certain general demurrers of the
defendants and dismissing the plaintiff's petition on the merits.   The
defendants in the original petition, Local Lodge No. 721 of the Brother-
hood of Railroad Trainmen, and certain named persons in their indi-
vidual capacity and as representatives of the labor organization and of
the class of railroad trainmen employed by the plaintiff, are plaintiffs
in error in the cross-bill of exceptions, assigning error upon the judgment
of the trial court overruling a general demurrer to the petition upon
the ground that it shows on its face that the court is without jurisdiction
of the questions raised, and that the matters involved are within the
jurisdiction of the National Railroad Adjustment Board exclusively,
under Title 45, § 153 (i), of U. S. C. A.

The railway company's petition alleges certain proceedings and negotia-
tions between the railroads and the unions under the provisions of the
Railway Labor Act, which resulted in a collective-bargaining agreement
settling all issues in dispute except two, one of which is referred to as
the hose-coupling function, and is the one here involved.   It is alleged
that, on the same date on which the collective-bargaining agreement
was executed—article 8 of which provided that "Coupling and uncou-
pling air, signal and steam hose, subject to separate agreement made
May 25, 1951"—the parties entered into another agreement which is
denominated as a contemporaneous ancillary agreement and which pro-
vides: "This agreement is supplemental to an agreement [collective
bargaining agreement] entered into this same date by the carriers and
employees parties hereto with respect to wages and rules of road and
yard service employees," and that the parties are agreed "that the dis-
pute as to this rule shall be submitted to a referee to be appointed by
the President of the United States for decision"; and that "The de-
cision of the referee shall be final and binding on the parties, and shall

become effective" upon the giving of the notice and the making of the election therein provided for. The referee thus provided for and thereafter appointed made his findings that "A new rule should be drafted and inserted in the principal agreement between the parties to this proceeding dated May 25, 1951, which should read as follows: 'Rules, agreements, interpretations or practices which prohibit or restrict the use of yardmen to couple or uncouple air, steam and signal hose, shall be modified so that there will be no prohibitions or restrictions on yardmen performing such work and no payment therefor will be made but where rules, agreements, interpretations or practices require payment to yardmen under conditions stated therein for coupling or uncoupling air, steam and signal hose, such rules, agreements, interpretations, or practices shall be changed to provide for the payment of only 95 cents. Individual carriers may elect to accept this rule or retain their present rules or practices without modification, by so notifying their general chairman prior to September 1, 1951, and if accepted the date of such notification shall become the effective date.'" It is alleged that the railway gave due notice of its election to abide by the practice which had previously been in effect upon its system, and under which the employees who performed the hose-coupling function received no additional or extra pay therefor. The collective-bargaining agreement entered into between the parties provides for a moratorium as follows: "No proposals for changes in rates of pay, rules or working conditions will be initiated or progressed by the employees against any carrier or by any carrier against its employees, parties hereto, within a period of three years from October 1, 1950, except such proposals for changes . . . which may have been initiated prior to June 1, 1950." The petition alleges that, notwithstanding the findings of the referee, the Brotherhood, on November 28, 1953, submitted to the railway company under the terms of the Railway Labor Act "and the current agreement" formal notice of demand for $1.50 a day for coupling hose; that the parties negotiated over this demand and were unable to agree; that the Mediation Board was called in and on May 21, 1954, the Mediator reported that his efforts had been unsuccessful and requested arbitration under section 5 First of the Railway Labor Act; that arbitration was rejected by the Brotherhood; and that on May 25, 1954, the railway company received a telegram from the Secretary of the National Mediation Board that the Brotherhood had authorized train and yardmen withdrawn from service Central of Georgia Railway at 5 p. m. Friday, May 28, 1954, unless matters in dispute were satisfactorily adjusted prior to that time. Upon receipt of this information, the railway company brought its petition for a declaratory judgment declaring the legal effect of and rights under the arbitration award, a permanent injunction enforcing the award, and, pending such an adjudication, a restraining order to maintain the status quo to prevent a threatened strike, and alleged irreparable injury to the railway. The railway company contends that the award of the referee declining to allow additional pay to the members of the Brotherhood for coupling hose was a final award, binding on both parties; and that the Brotherhood cannot now seek to avoid consequences of that award. The Brotherhood contends that the award of the referee became a part of the original collective-bargaining

agreement and subject to the moratorium therein contained, and subject to change at the demand of the Brotherhood after the date of October 1, 1953, under the terms of the Railway Labor Act, Title 45, § 156, U. S. C. A. *Held:*

1. The Railway Labor Act being a Federal statute, decisions of the United States Supreme Court construing and applying it are binding upon this court. *Georgia Railroad* v. *Cubbedge, Hazelhurst & Co.,* 75 *Ga.* 321; *Morris Plan Bank of Georgia* v. *Simmons,* 201 *Ga.* 157, 164 (39 S. E. 2d 166).

2. In Slocum *v.* Delaware, Lackawanna & Western R. Co., 339 U. S. 239 (1) (70 Sup. Ct. 577, 94 L. ed. 795, it is held: "Under § 3 of the Railway Labor Act, the jurisdiction of the Adjustment Board to adjust grievances and disputes of the type here involved is exclusive and the state court erred in interpreting the agreements and entering a declaratory judgment. . . The rationale of Order of Conductors *v.* Pitney, 326 U. S. 561, holding that federal courts should not interpret a carrier-union collective agreement prior to an interpretation of such agreement by the Adjustment Board, equally supports a denial of power to a state court to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act." In Order of Railway Conductors of America *v.* Southern Ry. Co. 339 U. S. 255 (70 Sup. Ct. 585, 94 L. ed. 811), it is held: "A dispute arose between a railroad and a labor union as to the railroad's obligation under their collective-bargaining agreement to give conductors extra pay for certain services. The railroad refused the demand of the union and commenced a declaratory judgment action in a state court. The union thereafter filed a petition for hearing and award before the Adjustment Board under the Railway Labor Act. *Held:* The state court was without power to interpret the terms of the agreement and adjudicate the dispute."

(*a*) Applying these rulings of the Supreme Court of the United States to the petition in the instant case, the trial judge erred in overruling the demurrer which raised the question of the court's jurisdiction.

3. What is here held is not in conflict with the decision in *Central of Ga. Ry. Co.* v. *Culpepper,* 209 *Ga.* 844 (76 S. E. 2d 482), for at page 847 this court there recognized the rule that "A petitioner will be required to exhaust his administrative remedies before resort to the courts will be allowed when the determination of the suit will result primarily in a determination of future relations between the carrier and its employees." In the instant petition it is alleged that "Said declaratory judgment is required to direct the parties in their future negotiations."

*Judgment reversed on the cross-bill of exceptions; main bill of exceptions dismissed. All the Justices concur, except Wyatt, P. J., Head and Mobley, JJ., who dissent.*

ARGUED NOVEMBER 8, 1954—DECIDED JANUARY 10, 1955.

*A. R. Lawton, John B. Miller,* for plaintiff in error.

*Myrick & Myrick,* contra.

MOBLEY, Justice, dissenting. I can not agree with the majority

opinion that the Superior Court of Chatham County was without jurisdiction in this case. The court based its conclusion upon the decisions in Slocum *v.* Delaware, Lackawanna & Western R. Co., 339 U. S. 239 (1) (70 Sup. Ct. 577, 94 L. ed. 795) ; Order of Railway Conductors of America *v.* Pitney, 326 U. S. 561 (66 Sup. Ct. 322, 90 L. ed. 318) ; and Order of Railway Conductors of America *v.* Southern Railway Co., 339 U. S. 255 (70 Sup. Ct. 585, 94 L. ed. 811), all of which hold that the courts are without power to interpret the terms of collective-bargaining agreements between railroads and unions, or employees, where the interpretation will govern future relations between the parties.

In the Slocum case the railroad had collective-bargaining agreements with two labor unions, and a dispute arose between the unions as to the scope of their respective agreements, each claiming certain jobs for its members. The Pitney case also involved a jurisdictional dispute between the railroad and two unions with which the railroad had separate agreements, each union claiming that its members should, under the agreements, man certain trains. In each of these cases the dispute "concerned interpretation of an existing bargaining agreement. Its settlement would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties." Slocum *v.* Delaware, Lackawanna & Western Railroad Co., 339 U. S. 239 (1), 242. Likewise, Order of Railway Conductors of America *v.* Southern Ry. Co., 339 U. S. 255 (70 Sup. Ct. 585, 94 L. ed. 811), involved a dispute "between a railroad and a labor union as to the railroad's obligation under their collective-bargaining agreement to give conductors extra pay for certain services," and the interpretation of the existing collective-bargaining agreement would govern future relations between the parties.

These cases are not authority for holding that the State court does not have jurisdiction of this case, for the reason that in each of them there was no dispute about the existence of a collective-bargaining agreement between the parties, an interpretation of which would decide the question at issue, and in each instance such interpretation would govern the future relations between the contesting parties. There the question was simply what the

agreement meant. That is not the situation at all in this case, for here the question is not the interpretation of a collective-bargaining agreement between the parties, but the question raised by the pleadings is, was the decision and award of Referee Cheney a common-law or general-law arbitration award, as contended by the railroad, or did it, when made, become a provision in the collective-bargaining agreement between the parties, which both admitted existed. There is a big difference in interpreting a collective-bargaining agreement, which admittedly exists, and in deciding whether an award made by an arbitrator, to whom the parties had submitted the question for arbitration, was an arbitration made under the general law, or under a collective-bargaining agreement. The Supreme Court of the United States in Brotherhood of Railroad Trainmen v. Howard, 343 U. S. 768 (2a) (72 Sup. Ct. 1022, 96 L. ed. 1283), held that, where a "dispute involves the validity of a contract, not its meaning, it cannot be resolved by interpretation of a bargaining agreement so as to give exclusive jurisdiction to the Railway Adjustment Board under Slocum v. Delaware, L. & W. R. Co., 339 U. S. 239." The situation here is analogous, for the question is, whether a collective-bargaining agreement as to the hose-coupler phase of operation, exists, or whether this was a legal arbitration as the railroad contends. Not just the validity, but the very existence of an agreement, is the question. If there is none, then there is no agreement for the Railway Adjustment Board to consider. This court in my opinion has jurisdiction and should determine whether the arbitration award was a common-law or legal arbitration as contended by the railroad, or whether when made it became a provision of the collective-bargaining agreement between the parties, as contended by the union.

The majority opinion distinguishes this case from *Central of Ga. Ry. Co. v. Culpepper*, 209 *Ga.* 844 (76 S. E. 2d 482), on the ground that the court there said that its decision would not govern future relations between the carrier and its employees, and that here the railroad is seeking a declaratory judgment to guide it in its future negotiations with the union. I do not agree that the interpretation asked by the railroad would govern future relations between the parties. There is a basic distinction between "future relations" and "future negotiations." In the

Slocum and Pitney cases, supra, the interpretation of the agreement would govern future relations between the parties, because the decision would settle whether the members of one union or of the other would man certain trains or perform certain work in the future. A decision of this court on whether this was an arbitration award independent of the collective-bargaining agreement, or whether it, when made, became a provision of the collective-bargaining agreement, decides whether the question of air-hose coupling has been settled once and for all time, or whether as a provision of the collective-bargaining agreement it was open for further negotiation after the expiration of the 3-year moratorium. It simply says whether the question was settled by arbitration, and is not the subject of further negotiation between the parties, or whether, as a provision in the collective-bargaining agreement, it is open to further negotiation. It does not settle any question that governs future relations between the parties. The decision of the court is therefore in conflict with the *Culpepper* case, supra.