GEO. A. CLARK & SON INC., Appellant v. NOLD et al.,
Respondents

(185 N.W.2d 677)

(File No. 10819. Opinion filed April 13, 1971)

**Maloney, Kolker & Kolker,** Aberdeen, **Culhane & Culhane,** Minneapolis, Minn., for plaintiff-appellant.

**Ericsson, Spencer & Blair,** Madison, for defendants-respondents.

RENTTO, Presiding Judge.

Plaintiff, a creditor of the bankrupt former owner of the real estate involved, claiming a lien thereon instituted this action against the defendants who purchased it from the trustee in bankruptcy, to have determined their respective interest in it. The judgment of the trial court held plaintiff's claim of lien to be of no force and effect and discharged it. From this determination it appeals.

In 1957 Stanley O. Vetos became the owner of the property which consists of two improved residential lots in Madison, Lake County, South Dakota. On May 5, 1967 Geo. A. Clark & Son Inc., plaintiff herein, started an action in Lake County on a promissory note against Vetos, who was then not a resident of this state, but a resident of Wisconsin. In connection therewith it had issued a writ of attachment and on May 8th it caused these two lots to be attached. On February 27, 1968 judgment for it was entered on the note for $6,758.39. Neither the bankrupt nor the trustee appeared in that action.

On June 8, 1967 Vetos filed a voluntary petition in bankruptcy in Wisconsin and was adjudicated a bankrupt. On September 8th the trustee in bankruptcy, pursuant to an order of the referee, sold at private sale the lots in question to F. W. Nold and Helen A. Nold for $17,250. The deed conveyed them free of all claims of lien, but apparently because of the manner in which the sale proceeding was had this provision was beyond his authority. The lots had been appraised in the bankruptcy at $20,032. Of the purchase price received by the trustee $15,730.40 was paid to the Madison Building & Loan Association in payment of a prior mortgage on the property held by it and certain expenses it had incurred as mortgagee. The balance was retained by the trustee as an asset of the bankrupt estate.

While the Nolds have asserted several defenses as to the claimed attachment lien of the appellant, they rely principally on the proposition that since it was obtained within four

months before the filing of Vetos' petition in bankruptcy it is null and void under the provisions of the Federal Bankruptcy Law. Concerning this, appellant argues that only the trustee may assert such invalidity. The Nolds' earlier ground of defense that the property was sold to them free and clear of liens appears to have been abandoned.

Basic to our problem is the provision of the bankruptcy law now codified as 11 U.S.C.A. § 107. It provides in part as follows:

"(a) (1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title: **Provided, however,** That if such person is not finally adjudged a bankrupt in any proceeding under this title and if no arrangement or plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and voided."

This provision of § 107 was formerly a portion of § 67 (f) of the Bankruptcy Act of 1898.

■ While it was thought by some that the adjudication operated automatically to nullify the proscribed liens, that view no longer prevails. The contrary is logically compelled when it is recognized that issues of the fact must be resolved before it can be said that a lien under this section is void. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed 770. Among these are the questions as to whether the bankrupt was insolvent when the lien was created and whether it was one of the type of liens listed in the statute and was acquired within four months of the filing of the petition. Collier on Bankruptcy, 14th Ed., § 67.05. In other words, they are only voidable.

The purpose of this section is to prevent one creditor being preferred over the others or obtaining an advantage. 8A C.J.S. Bankruptcy § 245a(1); 9 Am.Jur.2d, Bankruptcy, § 1031. It does not avoid liens as against all the world, but only as against the trustee and those claiming under him. 8A C.J.S. Bankruptcy § 245b; 9 Am.Jur.2d Bankruptcy, § 1042. So long as the property subject to the claimed lien is in the bankrupt estate the trustee is the proper person to either preserve the lien for the benefit of the estate or avoid it. As to property set aside as exempt it is for the bankrupt to avoid the lien. Roquemore v. Goldstein, 100 Ga. App. 591, 112 S.E.2d 24. The lots in controversy were not claimed by him as exempt property.

It seems to us that where the property was sold by the trustee, as was done here, that the purchaser has standing to seek avoidance of liens falling within the proscription of § 107(a) (1). He is a party claiming under the trustee. Finney v. Knapp Co., 145 Ga. 400, 89 S.E. 413; Fischer v. Pauline Oil & Gas Co., 309 U.S. 294, 60 S.Ct. 535, 84 L.Ed 764; same case on remand, 191 Okl. 346, 130 P.2d 305; Branch v. Human, 215 Ga. 209, 109 S.E.2d 732; 8A C.J.S. Bankruptcy § 245 (4)b. To hold otherwise in the circumstances of this case would be inequitable and in effect prefer the appellant as a creditor of the bankrupt. Since the validity of the lien was not determined by the bankruptcy court, it may properly be done in this action. Remington on Bankruptcy, Vol. 4, (Henderson) § 1618.5.

In commenting on a group of cases in another regard, Mr. Justice Roberts speaking for the court in the Fischer case said: "In none of these instances, however, was the litigation between third parties, or **between the lienor** or one claiming title under an execution sale, **and an opponent deriving title from the trustee in bankruptcy**". And concerning the fact issues on which the avoidance depends it is therein written that: "as between the trustee, **or one claiming under him, and the lienor,** or one claiming by virtue of the lien, the parties are entitled to have (the issues) determined judicially." Our holding is in harmony with these expressions. We have inserted the emphasis in the quoted statements to illustrate their application to this case.

While the cases cited and relied on by the appellant contain academic statements supporting its position, they are factually distinguishable from this case. None of them involved a purchaser of property for value from the trustee. In this connection it is proper to observe that the attempt of the trustee to be permitted to intervene in this action and seek avoidance of the attachment lien on the grounds that it was void under § 107, was resisted by appellant and denied by the court. This seems inconsistent with its present position.

It is not disputed that the attachment lien with which we are concerned was filed on May 8, 1967 nor that the Vetos' petition in bankruptcy was filed on June 8, 1967. It seems agreed by the parties that the lien was of the kind proscribed and was obtained within four months before the filing of the petition. In addition the court found that Vetos was insolvent when the lien was obtained and remained so up to the filing of his petition. This finding appellant attacks claiming that there is no competent evidence to support it.

To establish the bankrupt's insolvency the defendants introduced his testimony which had been taken by deposition. At its taking appellant appeared and objected to questions asked him concerning the various properties that he owned during the time in question and their values, on the ground that they were leading and suggestive. It seems to us that appellant misconceives the condemnation of this rule. Questions may legitimately suggest to the witness the topic of the answer. They become improper only when they suggest the specific answer desired. This is basically a matter of degree. Wigmore on Evidence, 3rd Ed., § 769; Mc Cormick on Evidence, § 6. The application of a rule as flexible as this must of necessity be largely committed to the discretion of the trial judge. We discern no abuse of that discretion in the rulings complained of.

In testifying as to the value of his properties and the extent of his debts the bankrupt utilized a copy of the schedules of these that he had filed in the bankruptcy proceeding. They were not put in evidence. Appellant's objection to this testimony on the ground that it was not the

best evidence was overruled. We think this ruling proper. In 29 Am.Jur.2d, Evidence, § 449, the rule is stated thus:

> "The best evidence rule has no application to a case where a party seeks to prove a fact which has existence independently of any writing; he may so do by oral testimony, even though the fact has been reduced to, or is evidenced by, a writing."

The challenged evidence was not offered to prove the contents of a document. Rather the document was used to refresh the witnesses' recollection. Olson v. Aldren, 84 S.D. 292, 170 N.W.2d 891; Wigmore on Evidence, 3rd Ed., §§ 758 and 759. This practice is permissible as reviving a present recollection.

 As the owner of the property he was qualified to testify as to its value, Hannahs v. Noah, 83 S.D. 296, 158 N.W.2d 678, and in doing so he did not have to possess the qualification of an expert as suggested by appellant. Manifestly, he was competent also to testify as to his indebtedness. Of course his testimony in both areas was subject to contradiction but none was offered.

 Since he did not appear before the court when testifying we have reviewed his testimony as though presented here in the first instance. Consequently, the clearly erroneous rule of SDCL 15-6-52 (a) does not apply. In other words, it is not burdened with a presumption in favor of the trial court's determination. State Automobile Casualty Underwriters v. Ruotsalainen, 81 S.D. 472, 136 N.W.2d 884. We have so viewed it and are satisfied that the questioned finding has ample evidentiary support. The thrust of his testimony was that his insolvency continued from May 1, 1967 to June 8, 1967. Incidentally copies of papers from bankruptcy proceedings included in the settled record reveal that the bankrupt had debts of $42,286 and assets valued at $7,150 when the lien was obtained.

We have considered the other propositions urged by the appellant. In our opinion they are groundless and do not merit discussion. Accordingly, the judgment appealed from is affirmed.

HANSON and BIEGELMEIER and WINANS, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Judge (dissenting).

I cannot agree that respondents as purchasers at a bankruptcy sale have standing to avoid appellant's lien under the provisions of 11 U.S.C.A. § 107. The authorities cited in the majority opinion seem to me to compel the conclusion that only the trustee in bankruptcy may assert invalidity of liens under the provisions of § 107.

As the majority opinion states, the purposes of § 107 is to prevent one creditor from being preferred over other creditors of a bankrupt. This being the case, I can see no reason why a purchaser at any bankruptcy sale should be permitted to invalidate liens under the provisions of § 107 inasmuch as he comes upon the scene after the adjudication of bankruptcy and therefore does not share the unhappy fate of creditors who have learned to their sorrow that they walked too long with the bankrupt. This is especially true where, as in the instant case, the purchaser had notice of the lien at the time he purchased at the bankruptcy sale.

The decision in Fischer v. Pauline Oil & Gas Co., 309 U. S. 294, 60 S.Ct. 535, 84 L.Ed. 764, declared that the predecessor of § 107 was not self-executing; it did not, in my opinion, hold that a purchaser at a bankruptcy sale is entitled to invalidate a lien for his own benefit. The case of Finney v. Knapp Co., 145 Ga. 400, 89 S.E. 413, was decided prior to the Fischer case and was premised on the assumption that the law in question was self-executing and that it automatically voided liens such as the one here involved. Moreover, in Finney the property had been ordered sold free and clear of all liens and encumbrances. Also, it appears that the case was in effect overruled by Morris Plan Bank of Georgia v. Simmons, 201 Ga. 157, 39 S.E.2d 166, where the Georgia Supreme Court held that a garnishee defendant could not assert the defense of § 107 because:

"* * * the petition * * * seeking to set aside the default judgment against themselves as garnishees,

> does not purport to serve any purpose recognized by the bankruptcy act, and the plaintiffs do not show any right to invoke its provisions. They are debtors rather than creditors of the bankrupt, and would therefore have no interest whatever in avoiding the lien for the benefit of such creditors. Nor are we concerned here with any right of the bankrupt, for it does not appear that the debt owed to him by garnishees was set apart to him as an exemption. Furthermore, he is not complaining."

See also Branch v. Human, 215 Ga. 209, 109 S.E.2d 732. So also in the instant case, respondents are not purporting to set aside the appellant's lien to serve any purpose recognized by the bankruptcy act.

In Kruger v. Harber Realty Corp., 11 N.J.Super. 552, 78 A.2d 621, a person claiming an ownership interest through a conveyance from a trustee in bankruptcy was not permitted to assert the invalidity of a prior lien under the provisions of § 107. See also Grimbilas v. Linfair, Inc., 126 N.J.L. 82, 18 A.2d 412 and Kobrin v. Drazin, 97 N.J.Eq. 400, 128 A. 796.

We are told that it would be inequitable to hold in the circumstances of this case that respondents may not assert the provisions of § 107, but we are not given any reasons why it would be inequitable to so hold. The fact that such a holding would have the effect of preferring appellant as a creditor of the bankrupt should not be of any legitimate concern to respondents as purchasers. Respondents do not claim that they are attempting to vindicate the rights of other creditors of the bankrupt. Indeed, it does not appear that they could validly make such a claim.

Respondents saw fit to purchase the property in question at a time when they were on notice of appellant's attachment lien. I cannot believe that the purpose of § 107 is to give strangers to the bankrupt and his creditors the right to invalidate an otherwise valid lien when neither the trustee nor any creditor has seen fit to take such action.