## 51794. WATKINS v. THE STATE.

MARSHALL, Judge.

This is an appeal from a conviction of aggravated assault by shooting a man with a 12-gauge shotgun and a sentence to five years in the penitentiary. Appellant enumerates as error the denial of his motion for a new trial. The bases of that motion were: (1) that verdict and judgment were against the weight of the evidence; (2) the sentence imposed under the circumstances of this case amounted to cruel and unusual punishment; (3) venue was not proven; and, (4) the court's charge on self-defense was insufficient. *Held:*

1. Appellant has neither briefed, argued, nor given any citation of authority in support of Enumerations 1, 3 and 4. Accordingly, pursuant to Rule 18 (c) (2), Rules of the Court of Appeals of the State of Georgia, each of the enumerations is deemed to have been abandoned. Moreover, our examination of the record indicates each to be without merit.

2. In the second enumeration of error, appellant

complains the sentence imposed by the jury amounts to cruel and unusual punishment. The jury heard evidence that the appellant was a 74-year-old diabetic, with one leg amputated who had a chronically ill wife totally dependent upon him. The jury also heard evidence that this same appellant had twice before been convicted of crimes involving the shooting of or shooting at others.

The classical rule for testing for cruel and unusual punishment is stated to be: "[s]o long as they [the General Assembly] do not provide cruel and unusual punishment, such as disgraced the civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion." *Whitten v. State,* 47 Ga. 297, 301.

Imposition of five years imprisonment for aggravated assault arising out of appellant's act of shooting an unarmed and nonthreatening victim with a 12-gauge shotgun is within the statutory limits authorized for aggravated assault with a deadly weapon. Such a sentence neither constitutes cruel and unusual punishment nor is it excessive so as to require this court to examine its propriety or to set it aside. *Goughf v. State,* 232 Ga. 178 (205 SE2d 844); *Dixon v. State,* 231 Ga. 33 (200 SE2d 138); *Evans v. State,* 228 Ga. 867 (188 SE2d 861); *Dutton v. Smart,* 222 Ga. 35 (148 SE2d 396); *Baker v. State,* 131 Ga. App. 510 (206 SE2d 111); *Clements v. State,* 128 Ga. App. 162 (196 SE2d 317); *Bearden v. State,* 122 Ga. App. 25 (176 SE2d 243).

*Judgment affirmed. Pannell, P. J., concurs. Evans, J., concurs specially.*

SUBMITTED MARCH 1, 1976 — DECIDED MARCH 18, 1976.

*Hill, Jones & Farrington, Bobby L. Hill, George P. Shingler,* for appellant.

*Andrew J. Ryan, Jr., District Attorney, Michael Gardner, Assistant District Attorney,* for appellee.

EVANS, Judge, concurring specially.

I concur in the judgment and with all that is said in

the majority opinion except the last paragraph in Division 2 of the opinion (and I feel that this *ought* to be the law, though it is not) wherein it is stated: "The classical rule for testing for cruel and unusual punishment is stated to be: '[s]o long as they [the General Assembly] do not provide cruel and unusual punishment, such as disgraced civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion.' *Whitten v. State,* 47 Ga. 297, 301." But alack and alas! This is not the law today because the United States Supreme Court has imposed cruel and unusual punishment upon the several states by invading our states and telling us what punishment our General Assembly may impose and what it may not impose. We are bound by the decisions of the U. S. Supreme Court. See *Thornton v. Lane,* 11 Ga. 459 (4), 500; *Mason & Dixon Lines v. Odom,* 193 Ga. 471 (2) (18 SE2d 841); *Thompson v. Eastern Air Lines,* 200 Ga. 216, 222 (39 SE2d 225); *Central of Ga. R. Co. v. Brotherhood of R. Trainmen,* 211 Ga. 263, 265 (1) (85 SE2d 413). And that court has held, and our own Supreme Court has had to reluctantly agree, that our General Assembly may not impose a sentence of death by electrocution as punishment for the ordinary garden variety of murder. See Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346); Stewart v. Massachusetts, 408 U. S. 845 (92 SC 2845, 33 LE2d 744); *Sullivan v. State,* 229 Ga. 731 (194 SE2d 410); *Sirmans v. State,* 229 Ga. 743 (4) (194 SE2d 476); *Grantling v. State,* 229 Ga. 746 (1) (194 SE2d 405); *Watson v. State,* 229 Ga. 787, 791 (194 SE2d 407).

At this moment there pend before the U. S. Supreme Court several cases from several states in which *special legislation* has been enacted wherein the death penalty may be imposed, such as murdering an officer of the law, and certain other specific categories of murder. But we have given up on the hope that the U. S. Supreme Court will relent, turn itself completely around, and travel in an opposite direction, and hold that the death sentence may be imposed in *any case of conviction of murder.*

The U. S. Supreme Court seized upon the words "cruel and unusual punishment" as they are set forth in

the U. S. Constitution in the Eighth Amendment (Code Ann. § 1-808), in order to rub out the death penalty. *"Cruel and unusual punishment!"* Exactly what is the meaning of that term? Surely, as *"unusual,"* our highest tribunal has overlooked the fact that death sentences have been imposed upon convicted felons since the dawn of history, execution being in every conceivable form, and oftentimes for such petty offenses as stealing a loaf of bread or picking another's pocket. It is late in the day, as we approach the 21st century, to suddenly discover that to put one to death because of crime is *unusual!* How many hundreds of years are required before a thing becomes *usual* instead of *unusual?*

As to *"cruel,"* in Georgia electrocution was substituted for hanging in 1924 (Code § 27-2512) and for the past fifty-two years persons convicted of murder have been put to death in Georgia by being electrocuted. The writer has personally witnessed the electrocution of a human being and there is nothing pretty about such a gruesome scene. *But the physical suffering lasts less than one second!* In by-gone days death was inflicted by the swordsman beheading the victim, by the guillotine, by being placed on the rack or wheel, where each day the limbs were slowly stretched until they were torn from the sockets, leaving the victim to die of pain, suffering and shock. Sometimes the victim was placed in a dungeon, without food or water, leaving him to slowly perish in greatest agony. All that is a part of the modern history of this world, and not all of it comes from the "Dark Ages," or what is sometimes called "Ancient History."

Perhaps an answer to *"cruel and unusual punishment"* as applied by the U. S. Supreme Court would be to allow the convicted person *to choose his own form of death, whether by hanging, the firing squad, the gas chamber, drinking the cup of hemlock; being beheaded by the axeman; the guillotine; being drawn and quartered; or being placed on the rack. And finally, if none of these is acceptable, the convicted murderer should be executed in the same way he put his victim to death, that is, by shooting, stabbing, poisoning, etc.* How could he forcefully or successfully urge that this is *cruel and unusual punishment,* after he chooses the method; or upon failure

to choose, when he is put to death, exactly like he put his victim to death?

But as of now, we are still in the powerful grip of the U. S. Supreme Court, and *Whitten,* supra, cited by the majority opinion in this case, is not the law of Georgia at this moment. Our elected Congress and our elected Presidents, and our citizenry have sat by quiescently and idly while nine men who have not been elected by the people, but have been appointed as Justices of the Supreme Court for life, have taken over the prerogative of running this government, dominating the elected Congress and the elected Presidents of the United States.

Perhaps one day we shall see States' Rights, as guaranteed by the Tenth Amendment to the Constitution of the United States, returned to the States, but that day is not yet. Then, and only then, the General Assembly of each state will be permitted to decide questions such as imposing a death sentence, when one is convicted of murder. It may be that the great increase in crimes since the U. S. Supreme Court ruled against the death sentence may serve to awaken our sleeping masters.