## BLETHYN et al. v. BIDDER et al.

### No. 34231.

United States District Court
District of Columbia.

Dec. 6, 1948.

Brandenburg & Brandenburg, of Washington, D.C., for plaintiffs.

Thomas S. Jackson and Richard L. Merrick, both of Washington, D.C., coadministrators of Benjamin Blethyn's estate.

Daniel J. Andersen, of Washington, D.C., and Boyd, Brooks & Wickham, of Cleveland, Ohio, for defendant William Benjamin Bidder.

William J. Bulow, Jr., of Washington, D.C., for defendant Benjamin Bidder.

TAMM, District Judge.

This is an action instituted by the trustees under the last will and testament of George Blethyn, deceased, to determine the heirs of Benjamin Blethyn, deceased. George Blethyn died in Wales on July 14, 1944. Benjamin Blethyn, a resident of the District of Columbia, departed this life, intestate, on March 19, 1939. Benjamin Blethyn died seized and possessed of real and personal property in the District of Columbia and during the administration of his estate, a portion of the realty was sold, his debts paid, and the funds now in his

estate, being the remains of the proceeds of the sale of his real estate, and income from realty still owned by the estate, are legally real and not personal property. Broadwell v. Banks, C.C., 134 F. 470.

Included in the evidence introduced before the Court (Plaintiff's Exhibit F) is a marriage certificate establishing the marriage of William Blethyn and Mary Howells Blethyn, on August 23, 1856. Prior to her marriage to William Blethyn, Mary Howells bore a daughter, Phebe Howells, on February 13, 1854, as established by the birth certificate introduced by the plaintiff (P's. Ex. K.) The name of the father of Phebe Howells is not shown on the birth certificate and there is no indication that William Blethyn was the father of Phebe Howells. Of the union of William Blethyn and Mary Howells Blethyn, five children were born. The death of three of these children preceded the death of George and Benjamin. Phebe Howells, who married Thomas Bidder, died on June 18, 1919, leaving to survive her, two sons, namely, William Benjamin Bidder and Thomas George Bidder, the defendants in the present action.

George Blethyn, brother of Benjamin Blethyn, as set forth above, died testate on July 14, 1944 and the trustees under his will, plaintiffs herein, are claiming the whole of the estate of Benjamin Blethyn.

Benjamin Blethyn was predeceased by both his parents and by two brothers, James and John, and his sister, Sarah, not any of these brothers and sister having left issue. Benjamin was allegedly the father, in Wales, of two children born out of wedlock to two different women. There was introduced in evidence a certificate of the birth of a son to one, Catherine Rees, on August 19, 1881, identified as the alleged son, John, of Benjamin Blethyn, it being noted that no father is designated in the birth certificate. There was also introduced in evidence a birth certificate of a daughter (now known as Lizzie Reynolds) to one, Elizabeth Davies, on September 29, 1881, which child, while allegedly the child of Benjamin Blethyn, has no father shown in the birth certificate. There was no evidence introduced before the Court that Benjamin had married either of these women *and* acknowledged these children as his own, both of which acts; i.e., marriage and acknowledgment, are necessary to legitimate children in this jurisdiction under the provisions of Section 106 of Title 18 of the District of Columbia Code. In the absence of any such evidence, these children, John Blethyn and Lizzie Reynolds, are not entitled to share in the estate of Benjamin Blethyn.

Benjamin Blethyn was survived by his brother, George, and by the two children of Phebe Bidder.

The plaintiffs in this action contend that George, the whole-blood brother of Benjamin is the *only* person legally competent under the District of Columbia statutes to take the estate of Benjamin Blethyn. The plaintiffs base their position upon their interpretation of Section 101 of Title 18, which provides in pertinent part as follows:

"On the death of any person seized of an estate in fee simple in lands, tenements, or hereditaments in the District of Columbia, and intestate thereof, the same shall descend in fee simple to such person's kindred in the following order, namely:

"First. To his child or children and their descendants, if any, equally.

"Second. If there be no child or descendant of a child, then equally to the father and mother of the intestate, or the whole to the sole surviving parent.

"Third. *If there be no father or mother, then to the brothers and sisters of the intestate, and their descendants equally.*" (Emphasis supplied.)

The plaintiffs further contend that since Phebe Howells Bidder was an illegitimate child, she and her heirs are without legal status as heirs of Benjamin. They further rely on their interpretation of Section 103 of Title 18 of the Code, which provides:

"No right in the inheritance shall accrue to or vest in any person other than the children of the intestate and their descendants, unless such person is in being and capable in law to take as heir at the time of the intestate's death; * * *."

Plaintiffs reason that since Phebe Bidder was dead at the time of Benjamin's death,

her children could not take from her under the language of the quoted section since, in the plaintiffs' words, Phebe Bidder "was not in being and capable in law to take as heir at the time of the intestate's death".

The defendants, as the admitted legitimate children of Phebe Bidder, claim that they are entitled to a one-half interest in the estate of Benjamin, and base their claim upon the provisions of Section 104 of Title 18 of the Code relating to Decedent's Estates and their distribution, providing that:

"*In no case* shall there be any distinction between the kindred of the whole and the half-blood." (Emphasis supplied.)

It is the defendants' position that their Mother, Phebe Bidder, was the half-sister of Benjamin Blethyn and that under the Code provision cited they are entitled to share in his estate.

■ It is clear that the claim of the defendants, children of Phebe Bidder, to a share in the estate of Benjamin Blethyn, must depend upon the extent to which the common law prohibition against inheritance by illegitimates has been removed by the statutes of the District of Columbia. The evidence appears to conclusively support a finding that Phebe Bidder was an illegitimate child. The common law was express and without any exception as to the inability of illegitimates to inherit. The rule of the common law is well stated in the case of Miller v. Board of Commissioners of Public Schools of City of Baltimore and Stewart, 8 Gill, Md., 128, where an illegitimate child died unmarried and without issue, in the year 1844, leaving his mother, two sisters and a brother who claimed to be representatives and distributees of his estate. The brother and sister were legitimate children of the Mother by her deceased husband, who was not, however, the father of said illegitimate child. The Court stated, 8 Gill at page 130:

"By the common law, bastards, having no inheritable blood, are incapable of taking as heir either to the putative father, mother, or any one else. In every well digested scheme of social and civil polity, it has always been a prominent object to prevent the mischiefs of illicit intercourse; and the fruit of such intercourse has been invariably blended and branded with the guilt of the parent. The infamy of the transgression descended to the child, which the estate of the parent passed over to the more distant kindred, or escheated to the State. Such was the policy of the common law, and so it remains in this State, with only such relaxation as the Legislature has engrafted upon it by the preceding Act of Assembly. The bastard is still nullius filius. The sin of the parent still attaches to the child in this respect; but so far as the Legislature could justly temper the severity of the sentence, and regard the unoffending character of the offspring, they have done so. The Act of 1786, further confirmed in 1820, reserves to the guilty parents the locus penitentiae. By marriage and subsequent adoption of the child, the sin is atoned for, and the penalty of the law remitted. The policy of the law is thus gratified, and the child to all intents and purposes, is here legitimated. So far, and on these conditions, the rule of the common law is repealed, that punishes the offspring for the guilt of the parent. * * *"

The policy of the law is well and succinctly expressed in 7 Am.Jur. § 155, wherein it is stated:

"Whatever rights a bastard may have in the estate of a deceased legitimate child of its mother, must be by virtue of some statute."

■ The basic statute of the District of Columbia, which relaxes the common law prohibition against inheritance on the part of an illegitimate child is Section 107 of Title 18, which provides:

"The illegitimate child or children of any female and the issue of such illegitimate child or children shall be capable in law of taking real estate by inheritance from their mother, or from each other, or from the descendants of each other, as the case may be * * * as if such illegitimate child or children had been born in lawful wedlock."

The D.C.Code has thus materially liberalized the status of bastards to inherit, and other pertinent sections of the Code must be interpreted in the light of the obvious Con-

gressional intent to liberalize the common law status of illegitimate children.

The Court is thus confronted with the question of whether the provisions of Section 104 of Title 18, supra, are restricted or qualified by the provisions of Section 107 of Title 18. The Court construes Section 104 of Title 18, providing that *"In no case* shall there be any distinction between the kindred of the whole and the half-blood" as meaning exactly what it says and, consequently, under this provision of the statute it follows that Phebe Bidder is a half-sister of Benjamin Blethyn, and in this capacity she and her descendants have the same legal status as George Blethyn and his heirs in the distribution of the estate of Benjamin.

Under the heading "Law of Descents," Title 18, § 101, as set out above, it is provided, as pertinent to the facts in this case, that realty of an intestate will descend:

"Third. If there be no father or mother, then to the brothers and sisters of the intestate, and their descendants equally."

This statute controlling descent is clear in providing that if an intestate leaves no child and no mother and father, his estate shall go to his "brothers and sisters" and "their descendants equally." As pointed out previously, Section 104 of Title 18 provides that a distinction between kindred of the whole and half-blood shall exist *"In no case"* and there is, consequently, no distinction between the status of George and Phebe and their respective descendants.

Consideration has been given by the Court to the decision in the case of Southern Railroad Company v. Hawkins, 35 App.D.C. 313, 21 Ann.Cas. 926, cited by the plaintiffs in their brief, but it is felt that the case is readily distinguishable upon the facts and law from the present one.

Concerning the plaintiffs' contention that the provisions of Section 103 of Title 18, providing, as stated above, that "no right in the inheritance shall accrue to or vest in any person * * * unless such person is in being and capable in law to take as heir at the time of the intestate's death," it is pointed out that the term "in being" must be construed in the statute quoted to refer to a child born prior to the death of the intestate. The term "in being" as defined in the previous sentence is distinguished from "not in being" referring to an unborn child. The applicability of this statute to the present facts is further negatived by the provision of Section 101 of Title 18 relating to the law of descent which, as indicated hereinbefore, provides that "if there be no father or mother, then to the brothers and sisters of the intestate, *and their descendants* equally."

The Court accordingly rules that the plaintiffs are entitled to one-half of the estate of Benjamin Blethyn and the defendants are entitled to one-half of the estate of Benjamin Blethyn divided equally between them. The probated will of George Blethyn, in Wales, contains the necessary instructions to the trustees as to the manner of distribution of George's share of the estate of Benjamin.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law.