45731.   PRUDENTIAL INSURANCE COMPANY
OF AMERICA v. WILLIS.

Argued October 8, 1970—Decided November 30, 1970—
Rehearing denied December 18, 1970—Cert. applied for.

*King & Spalding, A. Felton Jenkins, Jr., Joseph B. Haynes, Lavender & Cunningham, Woodrow Lavender, Fred Cunningham,* for appellant.

*Heard & Leverett, E. Freeman Leverett,* for appellee.

EVANS, Judge. 1. Counsel for the defendant contends that the Georgia law is controlling as to the meaning of the term "child or children" in the beneficiary clause of the Servicemen's Group Life Insurance Act (79 Stat. 883, 38 USCA § 770). Indeed, the ruling in *Cooper v. Melvin,* 223 Ga. 239 (154 SE2d 373) supports the contention as to the meaning of the term "child or children," for in that case the Supreme Court held that the term would not cover illegitimate children. That ruling is as follows: "The word 'children' in the printed form of the group insurance policy under consideration in the present case, insuring the putative father of illegitimate children, can not be construed to mean illegitimate children who have not been legitimated by their father." While that case involved a group insurance policy covering United States Civil Service employees pursuant to the Federal Employees Group Insurance Act of 1954, which appears to be a Federal law similar to that involved in this case, yet no discussion was made in that case as to the meaning of the Federal statutes. Hence, we must look to the purpose of the Federal statute here and determine whether the Congress intended the same to be interpreted by Federal law or by the law of the domicile of the various servicemen involved. We do not believe that the Congress intended that the various 50-odd State jurisdictions would interpret this law so as to have different results in different States. Undeniably, the *Melvin* case, supra, applied the Georgia law, and if the Georgia law controls, we need go no further than to reverse the trial court in granting the summary judgment for the plaintiff and denying it as to the defendant.

However, we have here numerous Federal decisions involving the National Service Life Insurance Act and the War Risk Insurance Act of World War I, the predecessors of the present law under consideration. In *Davenport v. Servicemen's Group Life Ins.,* 119 Ga. App. 685 (168 SE2d 621), this court stated at page 689: "War risk insurance was made available to those in active

military service for the greater protection of themselves and their dependents." And at page 691: "Just as the courts, in deciding change of beneficiary questions under the National Service Life Insurance Act, looked to decisions under the War Risk Insurance Act of World War I, the principles laid down in the decisions dealing with the former Act are pertinent and applicable to cases arising under the Servicemen's Group Life Insurance Act because of the substantial identity of the two Acts in regard to the requirements for change of beneficiary."

Therefore, Federal cases dealing with these two types of insurance should be considered by this court in rendering a decision here. While it is true the Servicemen's Group Life Insurance Act required free enterprise activity of various insurance companies throughout the 50 States, nevertheless, these insurance officials are required and controlled by this law which, even though not administered by agencies of the Federal government, the results are the same in its administration by private companies.

Therefore, we think the question should be decided by application of the Federal Law. Attention is here called to the ruling in United States v. Standard Oil Co. of California, 332 U. S. 301, 305 (67 SC 1604, 91 LE 2067): "Perhaps no relation between the Government and a citizen is more distinctively federal in character than that between it and members of its armed forces. *To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority.* See Tarble's Case (United States v. Tarble) 13 Wall. (U. S.) 397 [20 LE 597]; Kurtz v. Moffitt, 115 U. S. 487 [6 SC 148, 29 LE 458]." (Emphasis supplied.) And as stated in Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 182 U. S. 499, 505 (21 SC 885, 45 LE 1200): "The statute construed is a Federal one, being a law, not only for Colorado but for all of the mining States, and, therefore, a rule for all, and not a rule for one, must be declared."

We point out that in United States v. Oregon, 366 U. S. 643,

648 (81 SC 1278, 6 LE2d 575), the Supreme Court of the United States has held that the supremacy of Congress over veterans' affairs, even as against the property laws of a State, is well settled. We believe the ruling in Wissner v. Wissner, 338 U. S. 655 (2) (70 SC 398, 94 LE 424), is controlling here. This case involved a policy of insurance issued pursuant to the National Service Life Insurance Act of 1940. The court ruled as follows at page 658: "The National Service Life Insurance Act is the congressional mode of affording a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States. A liberal policy toward the serviceman and his named beneficiary is everywhere evident in the comprehensive statutory plan." See also Woodward v. United States, 341 U. S. 112 (71 SC 605, 95 LE 806), wherein the Supreme Court resolved the issue as to beneficiary solely as a Federal question without regard to State law whatever, and held that an adopted brother could take.

Therefore, construing the Federal statute according to the Federal law would require a holding that "child or children" would include an illegitimate child or children. Metropolitan Life Ins. Co. v. Thompson, 368 F2d 791, cert. denied 388 U. S. 914 (88 SC 2127); Metropolitan Life Insurance Co. v. Buckley, 278 FSupp 334.

In United States v. Philippine National Bank, 292 F2d 743, 744, we find the following: "The provision for gratuitous insurance was generous legislation, plainly adopted for humane and patriotic reasons." It was also pointed out in this case at page 745 that the Supreme Court said of the National Service Life Insurance Act: "The statutory provisions, where ambiguous, are to be construed liberally to effectuate the beneficial purposes that Congress had in mind." Clearfield Trust Co. v. United States, 318 U. S. 363 (63 SC 573, 87 LE 838); United States v. Zazove, 334 U. S. 602 (68 SC 1284, 92 LE 1601); DeSylva v. Ballentine, 351 U. S. 570 (76 SC 974, 100 LE 1415); see also Boyd v. Thayer, 143 U. S. 135 (12 SC 375, 36 LE 103); United States v. Oregon, 366 U. S. 643, supra; Levy v. Louisiana, 391 U. S. 68 (88 SC 1509, 20 LE2d 436). We do not believe that Congress intended an administration on

this law varying from State to State. The legislative history of the law indicates that the purpose of the same was geared to assuring support for dependents rather than passing on accumulated wealth to relatives according to local laws of inheritance as has been ruled by our Georgia courts.

Thus, in *Cooper v. Melvin,* 223 Ga. 239, supra, no question was made and none was decided as to whether the applicable Federal law or State law would control. Therefore the State law was applied. This case is not authority for holding that the State law must be applied in a case such as the one sub judice. To the contrary, we have cited herein various decisions by the United States Supreme Court which clearly and unequivocally show that the Federal law must be applied in cases where rights arise under Federal statutes, and affect every State in the union. The Supreme Court of Georgia has long ago positively and correctly pronounced the principle that the Georgia appellate courts are not bound by Federal decisions, *except those of the United States Supreme Court.* See *Thornton v. Lane,* 11 Ga. 459 (4); *Thompson v. Eastern Air Lines,* 200 Ga. 216, 222 (39 SE2d 225). And in *Central of Ga. R. Co. v. Brotherhood of Railroad Trainmen,* 211 Ga. 263 (1) (85 SE2d 413), the Supreme Court of Georgia held: "The Railway Labor Act being a Federal statute, decisions of the United States Supreme Court construing and applying it are binding upon this court. *Georgia Railroad v. Cubbedge, Hazelhurst & Co.,* 75 Ga. 321; *Morris Plan Bank of Georgia v. Simmons,* 201 Ga. 157, 164 (39 SE2d 166)." We therefore follow the decisions of the United States Supreme Court in arriving at the conclusion that illegitimate children are included within the term "children" in a policy of insurance such as the one here under consideration.

2. The evidence submitted here that the plaintiff, Lorenzo Willis, is the illegitimate child of the deceased, Johnny Cleveland Simpson, is not disputed in any respect by any of the facts presented. The only testimony which it could be contended disputes this fact is by the father of the deceased who testifies that he does not know for certain that this is his son's child. Yet he also testified against his interest that the deceased told him that the child was the deceased's, that he had paid the hospital bills at the re-

quest of his son, and that the deceased acted like he was the father. It would serve no purpose whatsoever to send this case to trial since on summary judgment the opposing party had opportunity to present all the evidence it had in order to refute the contentions of the party moving for summary judgment. It failed to do so. The court did not err in rendering judgment for Willis.

*Judgment affirmed. Hall, P. J., and Deen, J., concur.*