Minnie A. GREEN, Appellant,

v.

Darnetta GREEN, an Infant, and Lawrence I. Green, Jr., an Infant, Appellees.

No. 10003.

District of Columbia Court of Appeals.

Argued April 28, 1976.

Decided Oct. 27, 1976.

Richard J. Hopkins, Washington, D.C., with whom Othello G. Jones, Jr., Washington, D.C., was on the brief, for appellant.

Richard H. Nicolaides, Washington, D. C., guardian ad litem, for appellees.

Before YEAGLEY and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

MACK, Associate Judge:

In this case we are asked to decide whether acknowledged illegitimate children are entitled to receive the proceeds of a life insurance policy issued to their father pursuant to the Federal Employees Group Life Insurance Act, 5 U.S.C. § 8701 *et seq.* (1970). The trial court, presented with competing claims to insurance proceeds in cross-motions for summary judgment by the mother and the two illegitimate chil-

dren of the deceased policyholder, granted summary judgment in favor of the children. We affirm.

The facts are not in dispute. Appellant Mrs. Minnie A. Green is the mother of Lawrence I. Green, now deceased. Appellees Darnetta Green and Lawrence I. Green, Jr., are his two minor illegitimate children. Darnetta, born on August 9, 1963, is the daughter of decedent and then fifteen-year-old Beverly Camphor, who were never married. The decedent lived with and provided support for the child and her mother for five months after her birth. Subsequently, he frequently phoned and visited Darnetta and acknowledged her as his daughter to family members and acquaintances. She now resides with her maternal grandmother, who provides for her with public assistance payments.

Lawrence I. Green, Jr., born on January 16, 1965, is the illegitimate son of the decedent and Dorothy Byrd Solomon. The couple lived together from time to time after the child's birth, and decedent intermittently provided support for his son. On September 20, 1968, he executed a written acknowledgment with the District of Columbia Department of Health, acknowledging that Lawrence was in fact his son. The child lives periodically with his mother and also with appellant, his paternal grandmother. He has received social security benefits since his father's death.

Decedent was insured in the amount of $40,000 under a group policy issued to the United States Civil Service Commission by the Metropolitan Life Insurance Company pursuant to the Federal Employees Group Life Insurance Act, 5 U.S.C. § 8701 *et seq.* (1970). He died on June 13, 1974,[1] leaving no widow or legitimate issue of marriage.[2] He had not designated a beneficiary of the proceeds of the life insurance policy.

The Federal Employees Group Life Insurance Act provides for substitute beneficiaries in a specific order of priority in the event that no beneficiary is designated by the insured.[3] If, as here, there is no designated beneficiary and no surviving spouse, the "children" of an insured employee are entitled to the proceeds of the policy; if there are no surviving "children," the parents of the employee are next in priority.[4]

Concern with this substitute beneficiary clause prompted the Metropolitan Life Insurance Company, on February 25, 1975, to file a complaint for interpleader against decedent's mother and children. It alleged that it was uncertain as to whether, in this jurisdiction, it could "safely" pay the insurance proceeds to decedent's illegitimate children without danger of being compelled

1. His death was classified as a homicide.

2. A marriage was dissolved by divorce in 1973.

3. 5 U.S.C. § 8705(a) (1970).

4. Specifically, the statute states:

The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) or (c) of this title, in the Civil Service Commission. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employee or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death. [5 U.S.C. § 8705(a).]

to pay the same amount to his mother. In response to the complaint for interpleader, appellant and appellees filed cross-motions for summary judgment. The trial court agreed with appellees' contention that the term "children" included a father's illegitimate children, and summary judgment was entered in their favor. Appellant challenges this ruling on appeal, arguing that appellees are excluded from the class of "children" eligible to receive the proceeds of their father's life insurance policy because, as illegitimate children, they cannot inherit from their father under District of Columbia law.

Many other courts have faced the task of defining the scope of the term "children" in the substitute beneficiary clause of the Federal Employees Group Life Insurance Act and in similar clauses in other federal and private life insurance plans. With the sole exception of the Georgia courts, they have ruled that illegitimate children of the deceased, whether the insured was male or female, were entitled to recover the proceeds of their parent's life insurance policy.[5] Although the result in these cases is uniform, the theories relied upon vary widely. Thus, some cases interpreting the Federal Employees Group Life Insurance Act and other federal statutes [6]

have held that the scope of the term "children" involved a federal question and, relying in part on legislative history, the courts have determined that Congress intended to include all natural children of the deceased parents.[7] In other cases, the term has been defined by reference to state law, such as that set forth in inheritance statutes or support laws.[8] Where private plans have been at issue, courts have frequently relied on contract principles, finding a presumed intent to provide for all dependents, including children who are illegitimate.[9] They also often look to ordinary usage or to state support and maintenance statutes to determine the meaning of the term "children." [10]

*Brantley v. Skeens,* 105 U.S.App.D.C. 246, 266 F.2d 447 (1959), the first case involving a claim by illegitimate children under the Federal Employees Group Life Insurance Act, was decided by the federal circuit court of appeals in this jurisdiction, and its construction of the statute is binding upon us.[11] *Brantley* involved conflicting claims to life insurance proceeds by decedent's husband (who had entered into a subsequent bigamous marriage), an alleged common law husband, one legitimate child, and six illegitimate children. After rejecting the men's claims, the court held that all

---

5. *See* Annot., 62 A.L.R.3d 1329 (1975). Georgia courts have barred illegitimates from taking as "children" under the federal insurance statutes because of a strong state policy restricting their rights of inheritance. *See Cooper v. Melvin,* 223 Ga. 239, 154 S.E.2d 373 (1967). *But see Prudential Ins. Co. v. Willis,* 123 Ga.App. 150, 179 S.E.2d 688 (1970), *rev'd,* 227 Ga. 619, 182 S.E.2d 420 (1971), *aff'd by an equally divided court,* 405 U.S. 318, 92 S.Ct. 1257, 31 L.Ed.2d 273 (1972).

6. These statutes include the Servicemen's Group Life Insurance plan and the Veteran's Group Life Insurance plan, which now have a common substitute beneficiary provision. 38 U.S.C. § 770 (1970).

7. *See Metropolitan Life Ins. Co. v. Thompson,* 368 F.2d 791 (3d Cir. 1966), *cert. denied,* 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967); *United States v. Philippine Nat'l Bank,* 110 U.S.App.D.C. 250, 292 F.

2d 743 (1961); *Cantrell v. Prudential Ins. Co.,* 252 Ark. 70, 477 S.W.2d 484 (1972); *Haley v. Metropolitan Life Ins. Co.,* 434 S.W.2d 7 (Mo.App.1968).

8. *See Brantley v. Skeens,* 105 U.S.App.D.C. 246, 266 F.2d 447 (1959). *See also Metropolitan Life Ins. Co. v. Buckley,* 278 F.Supp. 334 (S.D.Miss.1967).

9. *See Patton v. Lee,* 394 F.Supp. 501 (W.D. Ky.1975); *Butcher v. Pollard,* 32 Ohio App. 2d 1, 288 N.E.2d 204 (1972). *See also Turner v. Metropolitan Life Ins. Co.,* 56 Cal.App.2d 862, 133 P.2d 859 (1943); *Samuels v. Aetna Life Ins. Co.,* 48 Mich.App. 761, 211 N.W.2d 104 (1973).

10. *See Patton v. Lee, supra; Turner v. Metropolitan Life Ins. Co., supra; In re Estate of R. L. B.,* 259 So.2d 206 (Fla.1972).

11. *See M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

seven children were entitled to the proceeds of their mother's policy. In reaching this conclusion, the court ruled that the meaning of the term "child" under the Act's substitute beneficiary provision must be determined by District of Columbia law. To determine the local law, it referred to a District statute on intestate succession which allowed illegitimates to inherit from their mother.[12] The court then concluded that the term "child" encompassed an illegitimate child of a female. However, it expressly left open the question of whether an illegitimate child of a male is also included. *Brantley v. Skeens, supra* 105 U.S.App. D.C. at 254, 266 F.2d at 455.

■ Appellant argues that we must answer this question in the negative because *Brantley* requires us to apply state law and, under the appropriate law, an illegitimate child of a father is not on an equal standing with other children insofar as inheritance rights are concerned. We agree that we must define the term "children" by reference to District of Columbia law. In addition, we also are aware that fairly recent decisions in this jurisdiction have determined that, under D.C.Code 1973, § 19–316, illegitimate children continue to have a common law disability of inheritance through the paternal line.[13] However, we

do not agree that these factors compel the conclusion advanced by appellant because, in our opinion, *Brantley* does not require us to look only to inheritance laws.

In holding that local law is controlling, *Brantley* cited one case, *De Sylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L. Ed. 1415 (1956), in which the Supreme Court ruled that state law governed in determining the meaning of the term "children" in a provision of the federal Copyright Act involving the renewal of a decedent's copyrights. However, the language of the opinion suggests reference to various laws of the state, not merely laws controlling descent and intestate succession.[14] Moreover, nothing in *Brantley* suggests that inheritance law is the sole reference, and the fact that the court expressly reserved the question of whether a father's illegitimate children were entitled to insurance policy proceeds is some indication that it did not intend to limit the word "child" to the meaning inferred from the laws of descent.

Although a substitute beneficiary clause in an insurance policy shares certain characteristics with intestate succession laws, the policy is, as one court has stated, a "contractual agreement involving expectations which do not necessarily coincide

---

12. D.C.Code 1951, § 18–716 (now D.C.Code 1973, § 19–316).

13. *Watts v. Veneman,* 155 U.S.App.D.C. 84, 476 F.2d 529 (1973) ; *Severance v. Weinberger,* 362 F.Supp. 1348 (D.D.C.1973). *Cf. Blethyn v. Bidder,* 80 F.Supp. 962 (D.D.C. 1948).

D.C.Code 1973, § 19–316, states in pertinent part:

The illegitimate children of a female and the issue of illegitimate children of a female are capable to take real and personal estate by inheritance from their mother, or from each other, or from the descendants of each other, as the case may be, in like manner as if born in lawful wedlock.

In *Watts v. Veneman, supra* at 87 n. 4, 476 F.2d at 532 n. 4, the court determined ,that "[t]he purpose of this provision was to remove the common law disability of inheritance through the maternal line. . . . The existence of this special exemption for ma-

ternal inheritance indicates that the common law disability was intended to remain for paternal inheritance." [Citation omitted.]

As we issue this opinion, we are informed ,that this provision of the Code is being amended to permit inheritance by illegitimate children through the paternal line.

14. Of interest here is the rationale of Supreme Court decisions invalidating, as violative of Equal Protection or Due Process, state or federal statutory provisions denying benefits to illegitmate children. *See Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) (state workmen's compensation laws) ; *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed. 2d 363 (1974) (Social Security Act) ; *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed. 2d 56 (1973) (state law denying paternal support). *Cf. Mathews v. Lucas,* —— U.S. ——, 96 S.Ct. 2755, 49 L.Ed.2d —— (1976), distinguishing the earlier cases.

with the purposes of these laws. . . . Insurance is usually not purchased with an eye toward preserving it for devolution to each succeeding generation. Of primary concern is the welfare of the insured's dependents . . .." *Butcher v. Pollard,* 32 Ohio App.2d 1, 8, 12, 288 N.E.2d 204, 209, 211 (1972). Since the purpose of insurance is in large part to assure support for dependents, local laws governing the support and maintenance of children are perhaps a more appropriate reference to be used in determining the children who are entitled to insurance proceeds when an insured father has failed to designate a beneficiary.[15]

Under District of Columbia law pertaining to support, the term "children" encompasses both the illegitimate and legitimate children of a male. *See* D.C.Code 1973, §§ 16–2341, –2342. For example, a father is under a duty to support an illegitimate child once paternity is established,[16] and such child has a valid claim against the father's estate, in case of death, for sums due under court order.[17] Moreover, the provision of the Code authorizing support proceedings for "minor children" has been held specifically to include illegitimate children, thereby authorizing a civil action for support against an acknowledged father even in the absence of a judicial determination of paternity. *Johnson v. Johnson,* 117 U.S.App.D.C. 6, 324 F.2d 884 (1963).[18] *Johnson* establishes that at least with re-

spect to support law in the District of Columbia, there is no distinction between a father's legitimate and acknowledged illegitimate children.

█ We are of the opinion that support law, which logically recognizes the relationship between a father and his illegitimate children, rather than the inheritance laws, which retain common law distinctions,[19] is the state law which properly should be used to determine the meaning of the word "children" for purposes of establishing entitlement to the proceeds of a father's insurance policy. Since under this law legitimates and acknowledged illegitimates are treated alike, both are included in the term "children" as used in the Federal Employees Group Insurance Act.

█ In adopting this definition, we reject appellant's assertion that confusion will result from the application of what is termed a "support test" in determining the status of persons making death claims under 5 U.S.C. § 8701. Obviously, potential claims of widows or widowers remain subject to the test of "legal status." There is good reason for the distinction. Reducing to basic terms what the courts have said— "a child is . . . a child,"[20] a dependent in the "biological and spiritual sense"[21] despite the fact that his natural parents may have failed to meet requisite legal standards of marriage. The Supreme Court has reminded us that visiting socie-

---

15. *See Patton v. Lee, supra* at 503; *Turner v. Metropolitan Life Ins. Co., supra* at 865, 133 P.2d at 861–62; *In re Estate of R. L. B., supra* at 208. *See also Metropolitan Life Ins. Co. v. Buckley, supra* at 337; *cf. Metropolitan Life Ins. Co. v. Thompson, supra* at 793.

16. *See* D.C.Code 1973, § 16–2342; *Johnson v. Johnson,* 117 U.S.App.D.C. 6, 11 n. 10, 324 F.2d 884, 889 n. 10 (1963).

17. *See* D.C.Code 1973, § 16–2347.

18. In *Johnson* the court, after first noting a trend in the law of this jurisdiction to offer an increasing degree of protection to illegitimates, construed the phrase "civil actions to enforce support of minor children" to en-

compass actions for support of acknowledged illegitimates, stating:

On the face of the statute, the word 'children' can fairly be construed to include all children, legitimate and illegitimate. The statute does not qualify, limit, or define the word 'children,' and appellant has made no showing that Congress intended the word to be limited. [*Johnson v. Johnson, supra* at 9, 324 F.2d at 887 (Citations omitted).]

19. *See Butcher v. Pollard, supra* 32 Ohio App. 2d at 12, 288 N.E.2d at 211.

20. *Metropolitan Life Ins. Co. v. Thompson, supra* at 793.

21. *Levy v. Louisiana,* 391 U.S. 68, 72, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

ty's condemnation of irresponsible liaisons on the head of an infant is both illogical and unjust. *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 175, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Jimenez v. Weinberger,* 417 U.S. 628, 632, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).

We hold that the claim of appellees, as children of the insured, was entitled to take precedence over the claim of appellant.

*Affirmed.*