470 A.2d 743 (1983)
In re ESTATE OF Joseph GLOVER, Deceased.
James H. GILLIAM, Appellant,
v.
Wiley A. BRANTON, Sr., et al., Appellees.
No. 82-1335.
District of Columbia Court of Appeals.
Argued September 7, 1983.
Decided December 14, 1983.
*744 Patricia Gunzelman Beatley, Washington, D.C., for appellant.
John P. Cummins III, Washington, D.C., with whom Lawrence E. Carr, Jr., Washington, D.C., was on the brief for appellee, Wiley A. Branton, Sr.
Alan Banov, Washington, D.C., for appellees, Fred Glover, et al.
Before FERREN and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.
PAIR, Associate Judge, Retired:
This appeal challenges an order of the Probate Division of the Superior Court dismissing, for want of jurisdiction, the amended complaint of James Homer Gilliam (appellant) for a declaratory judgment, as to his rights as a person born out of wedlock to inherit from one Joseph Glover (decedent), his putative father.
We reverse and remand with directions to reinstate the complaint and for further proceedings consistent with this opinion.
Joseph Glover (decedent), an adult resident of the District of Columbia, died intestate on the 25th day of January 1980. Probate proceedings were instituted, and by paragraph four of the Petition for Letters and Administration it was alleged that decedent was not survived by any child. In due course, Wiley A. Branton, Sr., appointed by the court as Administrator, filed on April 29, 1981, his First and Final Account, listing as heirs the brothers and sisters of the decedent and their issue. Appellant was not mentioned as an heir.
The account was approved by the court on July 22, 1981, and on August 22, 1981, the Administrator made partial distribution consistent with the account.
Being advised of the distribution, appellant filed on August 27, 1981 and served upon the Administrator "Notice of Additional Heir at Law and Opposition to First and Final Accounting," representing that he is the only child of decedent and the sole heir at law and next of kin within the purview of District of Columbia law. Then followed appellant's complaint for a declaratory judgment as to his right of inheritance from the decedent and the order dismissing the complaint on jurisdictional grounds, both of which presently engage our attention.
*745 Attached to the notice of additional heir at law was (1) a Certificate of Birth dated December 2, 1957, which represents that appellant was born September 10, 1928 in the County of Edgefield, South Carolina, the son of Hurley Gilliam and Joseph Glover, the decedent, (2) a copy of the program distributed at the funeral services of decedent on February 2, 1980, prepared, interestingly enough, by one of the respondents, designating appellant in the obituary as the only son of the decedent.
In his complaint for declaratory relief, appellant alleged that he was born out of wedlock to Hurley Gilliam and decedent, as indicated in the Certificate of Birth. He alleged also that during his lifetime, decedent acknowledged appellant as his son to respondents[1] and to other persons whose identity would be disclosed at the hearing on the complaint.
Respondents, urging that the Probate Division was without subject matter jurisdiction, moved to dismiss the complaint, and the motion was granted. In disposing of the motion, the court construed the relevant statutory scheme as effecting a denial of jurisdiction to declare paternity once the putative father is deceased.[2] Paternity determinations by the Probate Division, concluded the court, are limited to declaring whether the parenthood of a child born out of wedlock was established before the decedent died and, correspondingly, whether a child of such alleged status is legally an heir and entitled to inherit from his or her putative father.
In Andrade v. Jackson, 401 A.2d 990 (D.C. App.1979), we held that each division of the Superior Court, Civil, Criminal, Family, Tax and Probate, "possesses the undivided authority of the Court." Id. at 993. Accordingly, we concluded in Andrade that a division of the court that lacks jurisdiction to adjudicate a particular case should transfer it to the division with appropriate jurisdiction. Dismissal of the action is proper only where none of the divisions possess a statutory basis for the assertion of jurisdiction. Id. at 994. Thus, the issue in the present case, in view of the lower court's dismissal of the complaint for a declaratory judgment, is whether any division of the Superior Court has jurisdiction to determine inheritance rights of a child born out of wedlock subsequent to the death of a putative father. This is the first occasion on which the court has addressed this important issue.

I
Prior to 1976, District of Columbia law permitted children born out of wedlock to inherit only from their mothers.[3] However, guided by the spirit of the Anti-Sex Discriminatory Language Act,[4] D.C.Law 1-87, *746 23 D.C.Reg. 2544 (1976), the District Council in 1976 amended D.C.Code § 19-316 to provide that children born out of wedlock could inherit from their fathers as well as their mothers "if parenthood has been established by judicial process or pursuant to § 19-318."[5] Shortly thereafter, in 1977, the District Council clarified § 19-316 and the rights of children born out of wedlock through passage of the Paternity Procedures Clarifying Amendments Act of 1977.[6] The Clarifying Act altered § 19-316 by striking the words "by judicial process or pursuant to § 19-318." Thus, § 19-316 now provides:
Share of children born out of wedlock; their heirs; mother; father
Children born out of wedlock and the heirs of children born out of wedlock are capable of taking real and personal estate by inheritance from their mother or from their father if parenthood has been established, or from each other, or from heirs of each other, as the case may be, in like manner as if born in lawful wedlock, and the mother and such father, and their respective heirs, are capable of inheriting from such children.
The effect of the Clarifying Act was to require a person claiming a right of inheritance under § 19-316 to establish his or her relationship to the decedent. As envisioned by the Council, deletion of the words "by judicial process or pursuant to § 19-318" permits proving relationships to a maternal decedent through a birth certificate, while proving relationships to a paternal decedent is to be done through an inferential process.[7] In making this deletion, it is significant that the Council did make reference to a child born out of wedlock establishing his or her relationship to a paternal decedent. As this language clearly demonstrates, allowance was made for determinations of parenthood after the decedent's death. The amendatory language of § 19-316 clarifies the Council's intention.
Consequently, a proper interpretation of the express language of § 19-316 now requires placing emphasis on deletion of the words "by judicial process or pursuant to § 19-318." With this focus, the meaning of the statute is unambiguous. Inheritance from parents by children born out of wedlock is now appropriate "if parenthood has been established." (Emphasis added.) The obvious intent and effect of this language is to eliminate the requirement of a judicial declaration of parenthood prior to the putative parent's death as a prerequisite to inheritance by a child born out of wedlock. In eliminating the judicial declaration requirement, the District Council redefined the methods for establishing parenthood.
The Clarifying Act, as reported by Chairperson of the District Council's Committee on the Judiciary, David A. Clarke, raised the requirement of "a mandatory but flexible degree of establishing a claimant's relationship to the parental decedent." Council of the District of Columbia, Report of *747 Comm. on Judiciary, "Paternity Procedures Clarifying Amendment Act of 1977," p. 3 (Jan. 31, 1978). Although not specifying a particular procedure to follow in establishing relationships to a paternal decedent, the Council did indicate that "an inferential showing along the lines made in D.C.Code § 16-909 . . . would, for example, be required. . . ." Id. at 2. The inquiry, as evidenced by this language, is to focus on the relationship that existed between the child born out of wedlock and the putative paternal decedent.[8] Logically includible in the inferential inquiry into the existence of a paternal relationship is whether the putative father held himself out, during his lifetime, to be the parent of the person involved. Logic also dictates that public documents such as birth certificates are to be accorded considerable weight.
It must follow, therefore, that although relevant evidence of the existence or non-existence of the paternal relationship will have accumulated prior to the death of the putative father, it is not, however, essential that such a relationship be "established" as a legal fact before his death. Adoption of the trial court's definition of the statutory phrase "has been established" would require a child born out of wedlock to bring a paternity action prior to the death of the putative father.[9] This would undermine the District Council's deletion of "by judicial process" from § 19-316 in the Paternity Procedures Clarifying Amendment Act of 1977.[10] To comply with the Council's intent of eliminating the requirement of a judicial proceeding prior to the death of the putative father, the phrase *748 "has been established" must be taken to refer to the facts and circumstances that establish parenthood. Thus, for a child born out of wedlock to inherit from a putative father, the facts and circumstances establishing parenthood must have come into existence prior to the father's death. The child is not required to bring a paternity action prior to the putative father's death.[11]
Following the death of the decedent, a person can prove that he or she is a child born out of wedlock and an heir by offering evidence of parenthood that was in existence prior to the decedent's death. This result comports with the District Council's clear intention of providing an avenue for proving a parental relationship following the death of a putative father. This intent was made evident by Chairperson Clarke when he stated: "After enactment of Bill 2-232, a person claiming under § 19-316 to inherit from a decedent mother or decedent father would need to establish his or her relationship to the decedent." Council of the District of Columbia, Report of Comm. on Judiciary, "Paternity Procedures Clarifying Amendment Act of 1977," supra at 2. (Emphasis added).

II
Having concluded that D.C.Code § 19-316 does provide for determinations of parenthood subsequent to the death of a putative father, we next address the burden of proof that must be met by the child who was assertedly born out of wedlock. To resolve this issue, reference must be made to the District of Columbia Marriage and Divorce Act, D.C.Law 1-107, 23 D.C.Reg. 8737 (1977). As enacted in the District of Columbia Code, §§ 16-907, -908, -909 of the Marriage and Divorce Act address the rights and status of children born out of wedlock. The basic premise of these provisions is contained in § 16-908 which states that "[a] child born in wedlock or born out of wedlock is the legitimate child of its father and mother and is the legitimate relative of its father's and mother's relatives by blood or adoption."[12] In explaining these provisions, Chairperson Clarke emphasized that, under all District of Columbia laws, children born out of wedlock are now to be treated as the legitimate offspring of each of their parents.[13] Transcript, 53rd Legislative Meeting, Council of *749 the District of Columbia, Council Period One, 2d Sess., p. 58 (July 27, 1976). Although the provisions specify that the legitimacy of the child is presumed, as Chairperson Clarke recognized, paternity determinations can nevertheless be an issue, and therefore, "standards of determination [have been] provided." Id. Those standards are set forth in D.C.Code § 16-909 (1981).[14]
The language relevant to the facts presented to us in this appeal is contained in subsection (a) of § 16-909: "A child's relationship to its mother is established by its birth to her. A child's relationship to its father is established by proving by a preponderance of evidence that he is the father. . . ." The subsection continues by naming three situations that give rise to a rebuttable presumption of fatherhood, none of which applies to this case. The unsettled issue now before us whether § 16-909(a) is applicable exclusively to situations that give rise to the rebuttable presumptions or whether it permits proving parenthood by "a preponderance of the evidence" without the benefit of any presumption.
The lower court concluded that § 16-909(a) permits a child born out of wedlock to offer proof of parenthood as to a decedent putative father only if one of the enumerated presumptions is applicable. It is our view, however, that the lower court misread § 16-909(a) and unnecessarily limited its intended scope. A broader interpretation of § 16-909(a) is supported both by a literal reading of the statute and by the underlying legislative history.
The relevant statutory language clearly provides: "A child's relationship to its father is established by proving by a preponderance of evidence that he is the father . . ." (emphasis added.) It is of course firmly established that we are to construe a statute according to the ordinary meaning of its words. Tuten v. United States, 440 A.2d 1008, 1013 (D.C.App.1982); Davis v. United States, 397 A.2d 951, 956 (D.C.App.1979). The cited language in § 16-909(a) is unambiguous, and the fact that the subsection also establishes presumptions of paternity in specified situations does not alter the expressed right of a *750 child to prove paternity by a preponderance of the evidence without the benefit of a presumption.[15] Chairperson Clarke directly addressed this issue when he stated in reference to § 16-909(a): "[T]he statutory presumptions listed . . . are to be used in the course of a judicial determination, and. . . such presumption[s] are not a comprehensive statement of the universe of possibilities for proving parentage." Council of the District of Columbia, Comm. on Judiciary, "Extension of Remarks Concerning Amendments to Bill No. 1-89," p. 1 (November 19, 1976). We therefore hold that § 19-316 provides for parenthood determinations subsequent to the death of a putative father, and § 16-909(a) sets forth the burden of proof to be met by the child born out of wedlock.[16]

III
We next turn to the issue of which division of the Superior Court has jurisdiction to resolve the present case. In Andrade v. Jackson, supra, 401 A.2d at 994, we held that a division of the court that lacks jurisdiction to adjudicate a particular case should transfer it to the division with appropriate jurisdiction. Therefore, we must determine whether the Probate Division, upon remand, has jurisdiction to determine appellant's right to inherit from decedent or whether it should transfer to another division of the Superior Court for resolution of this issue.
It has been recognized in this jurisdiction that the interest in orderly judicial procedure requires the Probate Division to resolve issues that affect determinations of heirs. Andrade v. Jackson, supra, 401 A.2d *751 at 993; Nunley v. Nunley, 210 A.2d 12, 15 (D.C.App.1965); Gordon v. Matthews, 106 U.S.App.D.C. 400, 403, 273 F.2d 525, 528 (1959). The power to determine heirs is vested in the Probate Division through D.C. Code § 20-107 (1981).[17] In Nunley v. Nunley, supra, 210 A.2d at 16, this court held that the Probate Division necessarily had jurisdiction to determine the validity of a marriage in conjunction with ascertaining heirs. Similarly in Andrade v. Jackson, supra, 401 A.2d at 993-94, we remanded to the Family Division with an order to transfer to the Probate Division for a determination of the existence of a common law marriage in conjunction with ascertaining heirs. As we recognized in these decisions, orderly procedure requires that such issues be decided by the division with jurisdiction to determine claims to intestate estates. There is the same interest in orderly procedure here as there was in Nunley and Andrade. Accordingly, the Probate Division shall determine appellant's right to inherit from decedent.
Reversed and Remanded.
FERREN, Associate Judge, concurring:
I join in Judge PAIR's opinion for the court. I write separately, however, to highlight a concern.
I agree that if a judicial or other formal proceeding were required, before the alleged father dies, to show that paternity "has been established," D.C.Code § 19-316 (1981), many proper claimants would be denied their rightful inheritances. But I am concerned that the "preponderance of evidence" standard in D.C.Code § 16-909 (1981) may be low enough to invite baseless claims.[1] Thus, the trial court may have a difficult task in consistently applying the District's standard with the certitude required for a just result.
I would add my own understanding that, for a claimant to show by a preponderance of evidence that paternity "has been established," he or she will have to demonstrate that the deceased, during his lifetime, openly, notoriously, and unambiguously acknowledged the child as his own. Absent a formal, pre-death determination of paternity, I see no room for a claimant to prevail solely on the basis of circumstantial evidence that does not include the deceased's unequivocal acknowledgment of paternity.
NOTES
[1] Decedent's brothers and sisters.
[2] The learned trial judge obviously misapprehended the nature of appellant's complaint, which was for a declaratory judgment as to his right, as a child born out of wedlock, to inherit from his putative father. The determination of "parenthood" was incidental to such declaratory judgment.
[3] The controlling statute, D.C.Code § 19-316 (1973), stated:

§ 19-316. Share of illegitimate children; their issue; mother
The illegitimate children of a female and the issue of illegitimate children of a female are capable to take real and personal estate by inheritance from their mother, or from each other, or from the descendants of each other, as the case may be, in like manner as if born in lawful wedlock.
When an illegitimate child of a female dies leaving no descendants, or brothers or sisters, or descendants of brothers or sisters, the mother of the illegitimate child is entitled to the real and personal estate of the illegitimate child, and if the mother is dead, the heirs or distributees of the mother share in like manner as if the illegitimate child had been born in lawful wedlock.
[4] The Anti-Sex Discriminatory Language Act was enacted in 1977 "to achieve equality under the law for men and women by eliminating sex-based distinctions in the District of Columbia Code, so that the rights and responsibilities of persons under D.C. law will not be different solely on the basis of their sex." Council of the District of Columbia, Report of the Comm. on the Judiciary, "Anti-Sex Discriminatory Language Act," pp. 2-3 (May 20, 1976).
[5] As amended, the statute provided:

§ 19-316. Share of illegitimate children; their issue; mother; father
Illegitimate children and the issue of illegitimate children are capable of taking real and personal estate by inheritance from their mother or from their father if parenthood has been established by judicial process or pursuant to § 19-318, or from each other, as the case may be, in like manner as if born in lawful wedlock, and the mother and such father, and their respective heirs, are capable of inheriting from such children.
(D.C.Code § 19-316 (1973 and Supp. V 1978)).
[6] Enactment of the Clarifying Amendments Act was promoted by passage of the District of Columbia Marriage and Divorce Act, D.C.Law 1-107, 23 D.C.Reg. 8737 (1977). The Marriage and Divorce Act, as provided in D.C.Code §§ 16-907, -908, -909 (1981), abolished the concept of illegitimacy and the distinction in legal rights between children born in and those born out of wedlock.
[7] As reported to the District Council by David A. Clarke, Chairperson of the Committee on the Judiciary, the envisioned inferential process for establishing relationship to a paternal decedent is necessary "due to the evident biologically-based problems in showing paternity in contrast to maternity." Council of the District of Columbia, Report of Comm. on Judiciary, "Paternity Procedure Clarifying Amendment Act of 1977," p. 2 (Jan. 31, 1978.)
[8] Production of a valid birth certificate is sufficient to establish a maternal relationship for purposes of inheritance. Council of the District of Columbia, Report of Comm. on Judiciary, "Paternity Procedures Clarifying Amendment Act of 1977," supra at 2.
[9] In Estate of Kenny, 114 Misc.2d 203, 450 N.Y.S.2d 1003 (Sur.1982), a New York Surrogate's Court interpreted a statute concerning the inheritance rights of children born out of wedlock that was similar to D.C.Code § 19-316 (1981). The statute conferred distributive status if "paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own." New York EPTL § 4-1.2(a)(2)(C) (McKinney 1981). After determining that the legislature had intended to equalize inheritance rights of those born in and out of wedlock, the court construed the statute as creating the right to establish paternity subsequent to the asserted father's death. Kenny, supra, 114 Misc.2d at 216, 217, 450 N.Y.S.2d at 1011. In support of its construction and its determination that the statute should be applied retroactively, the court stated: "And as it must be assumed that most intestates whose fatherhood can be established under subsection (a)(2)(C) would have desired the child or children whom they acknowledged to the world at large to take or share in their estates, the most liberal retrospective application consistent with practicality is appropriate." Id.
[10] The appellee-administrator asserts that the legislative history of § 19-316 demonstrates that paternity must have "been established" through a judicial proceeding prior to the death of the putative father. He argues that when the Anti-Sex Discriminatory Language Act was introduced before the District Council in March of 1975, the word "paternity" had been replaced by "parenthood" in § 19-316. However, while the bill was pending, the Corporation Counsel submitted numerous proposed "technical" amendments, one of which would have retained "paternity" in § 19-316. Appellee argues that the use of "paternity" was proposed because the rights of children born out of wedlock to inherit from their mothers were already well established. Although the technical amendments were accepted by the Committee on the Judiciary and Criminal Law, the final version of § 19-316 nevertheless contained the word "parenthood." Hence, argues the appellee, to establish different requirements of proof for paternal versus maternal descent and distribution to illegitimates, the Paternity Procedures Clarifying Amendments Act of 1977 deleted the words "by judicial process or pursuant to § 19-318" from § 19-316. Read in this context, asserts the appellee, the Amendment did not eliminate the requirement that paternity be established by judicial process prior to the putative father's death.

The flaw in appellee's argument is that the District Council did not, in fact, replace "parenthood" with "paternity." Therefore, the literal meaning of § 19-316 is that judicial process is not required in establishing parenthood. This literal reading of the statute is supported by ample legislative history that demonstrates an intent to enact procedures that make proving paternity less burdensome. See supra notes 6-9 and accompanying text.
[11] Appellees argue that permitting claimants to prove paternity subsequent to the death of the putative father will encourage the filing of late claims and create uncertainty in the distribution of intestate estates. However, Rule 14(g) of the Superior Court Probate Rules provides that an interested party who was not sent a copy of the final account can reopen such account only if objections are filed within three months after approval by the court. This three-month limitation eliminates potential uncertainty. In the instant case, appellant was not sent a copy of the final account, and his objection was made within the three-month period prescribed by Rule 14(g).
[12] Prior to enactment of the District of Columbia Marriage and Divorce Act, the laws pertaining to support of children in this jurisdiction did not distinguish between children born in or out of wedlock. See D.C.Code §§ 16-2341, -2342 (1973). Thus, in Green v. Green, 365 A.2d 610 (D.C.App.1976), this court looked to the laws concerning support in determining whether children born out of wedlock were entitled to the proceeds of a deceased putative father's life insurance policy. Significantly, we recognized that a child born out of wedlock is authorized to bring a civil action for support against an acknowledged father "even in the absence of a judicial determination of paternity." Id. at 614 (citing Johnson v. Johnson, 117 U.S.App.D.C. 6, 324 F.2d 884 (1963)).

In holding that the children in Green were entitled to the proceeds of their deceased father's insurance policy, we recognized that parenthood had been established through acknowledgment and not by judicial declaration. Acknowledgment consisted of the father having intermittently lived with the two children. In addition, he had provided periodic support and had openly acknowledged that they were his children. A written acknowledgement as to one of the children had been filed with the District of Columbia Department of Health. Id. at 611. These factors were viewed subsequent to decedent's death to determine that parenthood had been established during his lifetime.
[13] D.C.Code § 16-907 (1981) defines the terms "legitimate" and "born out of wedlock":

§ 16-907. Parent and child relationship defined.
(a) The term "legitimate" or "legitimated" means that the parent-child relationship exists for all rights, privileges, duties, and obligations under the laws of the District of Columbia.
(b) The term "born out of wedlock" solely describes the circumstances that a child has been born to parents who, at the time of its birth, were not married to each other. The term "born in wedlock" solely describes the circumstances that a child has been born to parents who, at the time of its birth, were married to each other.
[14] D.C.Code § 16-909. Proof of child's relationship to mother and father.

(a) A child's relationship to its mother is established by its birth to her. A child's relationship to its father is established by proving by a preponderance of evidence that he is the father, and there shall be a presumption that he is the father:
(1) if he and the child's mother are or have been married and the child is born during the marriage, or within 300 days after the termination of marital cohabitation by reason of death, annulment, divorce, or separation ordered by a court; or
(2) if, prior to the child's birth, he and the child's mother have attempted to marry, and some from of marriage has been performed in apparent compliance with law, though such attempted marriage is or might be declared void for any reason, and the child is born during such attempted marriage, or within 300 days after the termination of such attempted marital cohabitation by reason of death, annulment, divorce, or separation ordered by a court, or
(3) if, after the child's birth, he and the child's mother marry or attempt to marry, (with the attempt involving some form of marriage ceremony that has been performed in apparent compliance with law), though such attempted marriage is or might be declared void for any reason, and he has acknowledged the child to be his.
(b) If questioned, a presumption created by subsection (a)(1)-(3) may be tried and determined by the Superior Court.
(c) Upon the entry of a final judgment determining the parentage of a child by the Superior Court under the provisions of section 16-2341, et seq., or by any other court of competent jurisdiction, the parent-child relationship is conclusively established.
(d) The parent-child relationship between an adoptive parent and a child may be established conclusively by proof of adoption.
[15] In Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the Supreme Court considered the constitutionality of an Illinois statute that allowed children born out of wedlock to inherit from their intestate father only if the father had acknowledged the child and the child had been legitimated by the intermarriage of the parents. The state interests asserted in support of the statute were the encouragement of legitimate family relationships and the maintenance of an organized method for disposing of an intestate's property. Id. at 768, 97 S.Ct. at 1464. The Court rejected the relationship between the statute and the first state interest as being "most attenuated." Id. The interest in an efficient system for disposing of an intestate's property was recognized, but the Court concluded that in requiring marriage as an absolute prerequisite to inheritance, the statute violated the Equal Protection Clause in that it excluded "at least some significant categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws." Id. at 771, 97 S.Ct. at 1465.

If § 16-909 were given the interpretation advocated by appellee, it would be similar to the Illinois statute that was considered in Trimble. To utilize the methods of proof in § 16-909, a claimant's parents would have to marry or have attempted to marry. Despite the valid interest in an efficient system for disposing of an intestate's property, the precondition of marriage would surely exclude "categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates. . . ." In view of Trimble, it is likely that such an interpretation would render § 16-909 violative of the Equal Protection Clause.
In Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), the Supreme Court recognized a substantial state interest in devising laws governing the "often difficult problem of proving the paternity of illegitimate children and the related danger of spurious claims against intestate estates." Id. at 265, 99 S.Ct. at 523. The Court held that a statute requiring paternity to be established during the father's lifetime was substantially related to this state interest, and there was consequently no violation of the Equal Protection Clause. Id. at 275-76, 99 S.Ct. at 528-529. Although the interpretation of § 19-316 advocated by appellees would be constitutional in view of Lalli, the legislative history underlying the statute demands a contrary interpretation.
[16] The types of proof to be offered in attempting to establish paternity by a preponderance of the evidence will of course vary from case to case and will be controlled by the discretion of the trial judge. We do note, however, that D.C.Code § 30-320 (1981), a statute concerning support for children born out of wedlock, recognizes establishing parenthood through open acknowledgment by the putative parent. In addition, public documents such as birth certificates and testimony of the claimant's and the putative father's relatives should be considered in determining whether the claimant has established paternity by a preponderance of the evidence.
[17] D.C.Code § 20-107 (1981) provides:

Right to seek Court resolution.
An interested person, the beneficiary of a trust or the Register may, at any time, apply to the Court to resolve questions concerning the estate or its administration.
[1] Compare New York EPTL § 4-1.2(a)(2)(C) (McKinney 1981), quoted in Estate of Kenny, 114 Misc.2d 203, 204, 450 N.Y.S.2d 1003, 1004 (Sur.1982) (distributive status conferred on non-marital child if "paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own").